Katherine CHOCKNOK and Elina
Andrew, Appellants,

v.

STATE of Alaska, COMMERCIAL
FISHERIES ENTRY
COMMISSION, Appellee.

No. S–222.

Supreme Court of Alaska.

March 15, 1985.

Frederick Torrisi, Torrisi & Snyder, Dillingham, and Bruce B. Baltar, Alaska Legal Services Corporation, Dillingham, for appellants.

Margot O. Knuth, Juneau, Asst. Atty. Gen., Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

The primary issue raised in these consolidated appeals is whether the Commercial Fisheries Entry Commission (Commission) applied improper standards in determining that appellants were not partners in fishing ventures with their husbands and therefore were not entitled to income dependence points under 20 AAC 05.630(b)(2). These points, if awarded, would be sufficient to entitle each appellant to receive a limited entry permit for the Bristol Bay drift gill net fishery. We conclude that the Commission determined the partnership questions presented by these cases under an erroneous standard.

## I. BACKGROUND

The Limited Entry Act, passed by the Alaska Legislature in 1973, calls for the Alaska Commercial Fisheries Entry Commission to adopt regulations to rank entry permit applicants based on specified "hardship standards." These standards include the applicant's "degree of economic dependence upon the fishery, including but not limited to percentage of income derived from the fishery...." AS 16.43.250(a)(1). Pursuant to this mandate, the Commission adopted regulations establishing a point system for determining the applicant's income dependence percentage. 20 AAC 05.-630(b)(1). The applicant may be awarded up to ten points based on the percentage of income derived from harvesting the fishery resource while participating as a gear license holder in the years 1971 and 1972.[1] *Id.* Alternatively, if "special circumstances" exist such that this percentage does not realistically reflect the applicant's income dependence, the Commission may award up to ten points based on the applicant's special showing of income dependence. 20 AAC 05.630(b)(2).

We held in *State v. Templeton,* 598 P.2d 77 (Alaska 1979), that an applicant who had not held a gear license in his or her own name in 1971 or 1972, but who had fished as a business partner with a gear license holder in those years, was entitled to consideration for special circumstances income dependence points under 20 AAC 05.-630(b)(2). The Commission did not adopt regulations in response to the *Templeton* decision. However, in an administrative decision, the Commission did adopt a five

---

**1.** We recently upheld the gear license requirement in *Kalmakoff v. CFEC,* 693 P.2d 844 (Alaska, 1985).

part test for determining partnerships between spouses. *Mabel Brandon,* CFEC File No. 75–326 (1980).

The five factors examined in *Brandon* were: (1) whether the partners exercised joint decision making authority; (2) whether each partner drew income separate and distinct from the other; (3) whether each partner held a commercial license during the year of partnership; (4) whether a partnership tax return was filed; and (5) whether each partner held a gear license. Applying these standards to Chocknok and Andrew, the Commission found that neither was a partner in a business partnership. Chocknok and Andrew claim that the *Brandon* test unjustly discriminates against married partners, particularly married women. We agree.

## II. FACTS AND PROCEEDINGS

### A. Katherine Chocknok

Katherine Chocknok lives in New Stuyahok, a village on the Nushagak River about 50 miles northeast of Dillingham. She fished with her husband in the Bristol Bay gill net fishery from 1965 through 1972, the cutoff year for applicants to qualify for priority classification for a permit. *See* 20 AAC 05.630. She held a commercial fishing license in 1967, but held no fishing license in any other of those years. She first held a gear license in 1973.

In 1971 and 1972, the crucial years for income dependence evaluation for entry permit applications, the Chocknoks fished together aboard the "Mary E.S." Boat and gear were purchased with proceeds of the fishing business and were owned jointly. Ms. Chocknok and her husband testified that they were partners in the fishing operation, that proceeds were used to pay for fishing expenses first and then family expenses, and that any surplus was deposited in a bank account to which each had access. On the other hand, the Chocknoks' 1972 joint tax return, prepared by a Dillingham bookkeeper, listed Ms. Chocknok's occupation as "housewife." No partnership return was filed for either 1971 or 1972. All the fishing earnings were claimed by her husband for social security tax purposes.

Ms. Chocknok applied for a Bristol Bay drift gill net entry permit in 1977 claiming twenty-four and one-half hardship points. After initially rejecting all her claims, the Commission appointed a hearing officer who awarded her fifteen hardship points; her claim for ten additional income dependence points as a partner was denied. Because seventeen points are needed for a Bristol Bay drift gill net permit, her application was denied.

In denying Ms. Chocknok income dependence points, the hearing officer found that none of the five *Brandon* criteria for determining a business partnership was met. Therefore he found "nothing to indicate that the applicant is a full business partner with [her husband]; she is instead a marital partner with him, and she fishes with him as wife and crewperson, and not as a business partner." CFEC File No. 75–331.

The Commission sustained the hearing officer's decision and the superior court affirmed.

### B. Elina Andrew

Elina Andrew is from Togiak and is also a long-time participant in the Bristol Bay drift gill net fishery. She fished with her husband John from 1965 through 1973. Her husband testified through an interpreter that he and his wife fished as "fifty-fifty partners" and that they each paid half the expenses. The Andrews produced a 1971 receipt for $1,048.50 for gasoline and oil charging half to Elina and half to John. The two purchased their boat together in 1968 from their joint earnings; they considered it to be jointly owned. On their 1972 joint tax return both listed their occupations as "fisherman." They filed a sole proprietorship profit form, however, rather than a partnership form. The Andrews testified that their earnings were divided equally.

Ms. Andrew applied for a limited entry permit and was initially granted fifteen points. No points were awarded for income dependence as a fishing partner. An

administrative hearing resulted in two points being revoked.[2] The Commission revoked two additional points but otherwise adopted the hearing officer's recommended decision, leaving Ms. Andrew with eleven points. After her petition for reconsideration was denied, appeal was made to the superior court whereupon consolidation with the Chocknok case was ordered. The superior court affirmed the Commission's decision.

## III. DISCUSSION

The Commission's five-part *Brandon* test is based on its interpretation of our decision in *Templeton.* The partners in *Templeton* were brothers who fished together commercially from 1969 to 1974.[3] Templeton and his brother both invested in the partnership's vessels and gear, and both fished full time. Though Templeton held the gear license in his name in some years, in 1971 and 1972 his brother held the gear license. We found that the facts indicated that Templeton's participation in 1971 and 1972 was that of an owner and operator of gear, rather than that of a crew member, and therefore he was entitled to consideration for special circumstances income dependence points. We held that "allocating one permit between two partners solely on the fortuitous circumstances of which one held the gear license in two given years does not realistically weigh the hardship which each partner would suffer by denial of a permit" and results in unjust discrimination in violation of AS 16.43.-010(a). *Templeton,* 598 P.2d at 81.

■ While the Commission purports to base its *Brandon* test on *Templeton,* the *Brandon* test is also expressly designed to distinguish business partnerships from partnerships "established solely because of the fact of marriage." *Brandon,* CFEC

File No. 75–326. The two relationships, however, are not mutually exclusive.[4] An attempt to distinguish partnerships on the basis of the marital relationship between the partners unjustly discriminates against the married partner who is refused income dependence points. An examination of the *Brandon* factors indicates that the test will exclude the majority of married women from consideration for special circumstances income dependence points pursuant to *Templeton.*[5]

■ The first factor, whether the partners exercised joint decision making authority, is an important attribute of the typical business partnership. However, the absence of joint control does not necessarily disprove the existence of a partnership, since one partner may be given exclusive management of a partnership by agreement. *Constans v. Ross,* 106 Cal. App.2d 381, 235 P.2d 113, 117 (1951); *Greenhouse v. Zempsky,* 153 Conn. 501, 218 A.2d 533, 535 (1966).

■ The second factor is whether the husband or wife drew income separate and distinct from the other. We assume that by this the Commission means to examine whether there was a distinct splitting and payment of shares of the profits to each spouse. The receipt of a share of the profits of a business is prima facie evidence of partnership, AS 32.05.020(4), but the Commission's test overstates the importance of the receipt of a distinct share of the profits as a requirement for finding that a partnership exists. Most married people pool their income and draw from that pool when necessary; to do otherwise is artificial and cumbersome. In addition, the Alaska statutes provided a specific incentive for married fishing partners to pool their income.

---

**2.** An administrative mistake resulted in 12 points actually being granted.

**3.** It is unclear from the *Templeton* opinion to what extent a formal agreement governed the operation of the partnership.

**4.** *See, e.g., Northern Lights Motel v. Sweaney,* 561 P.2d 1176, 1187, *reh'g denied,* 563 P.2d 256

(Alaska 1977) (husband and wife can enter into business partnership or joint venture with each other even without a formal agreement).

**5.** This discrimination becomes especially acute if the couple divorces, since the partner without a permit will be unable to continue fishing in the same manner as before.

Prior to 1978, the wife of a commercial fisherman "who [did] not receive income separate and distinct from that of her husband as a result of her participation in the fishery" could fish with her husband without a commercial fishing license. AS 16.-05.940(2), *amended by* ch. 105 § 12, SLA 1977. Considering these incentives to pool income, the presence of income pooling in a marriage should not be dispositive as to the non-existence of a business partnership.[6]

█ The third *Brandon* criterion is whether the couple filed a partnership tax return. While filing a partnership return is evidence of the existence of a partnership, failure to file one does not necessarily indicate anything other than ignorance of the tax laws. Neither the Chocknoks nor the Andrews prepared their own tax returns. The bookkeeper who prepared the Chocknoks' returns stated that he seldom used partnership tax forms for family partnerships and that most of his customers spoke little English and did not understand the tax system. Difficulty in bridging cultures should not be a ground for denial of a permit.

█ Whether each partner held a commercial fishing license during the partnership is the most questionable element of the *Brandon* test. The crucial years for finding the existence of the partnership are 1971 and 1972. At that time a wife did not need a commercial fishing license to fish with her husband. AS 16.05.940(2), *amended by* ch. 105 § 12, SLA 1977. To now consider the failure to obtain an unnecessary license as significant· is capricious.

The final factor considered by the Commission is whether and when each partner held a gear license. In *Templeton* we stated that "allocating one permit between two partners solely on the fortuitous circumstances of which one held the gear license

in two given years does not realistically weigh the relative hardship which each partner would suffer by denial of a permit." 598 P.2d at 81. From this the Commission apparently reasoned that fortuity of gear license holding, i.e., a determination that it was a matter of chance that one partner held the license and the other did not, was another index of the existence of a business partnership, and that this could be shown by the fact that each partner held a gear license at some point prior to the qualification date.

Here, the Commission points out that neither Katherine Chocknok nor Elina Andrew held a gear license in her own name until 1973, when a "sliding gear scale" went into effect in Bristol Bay. This regulation made the number of units of gear that could be fished from a vessel dependent on the number of gear license holders aboard. The Commission therefore argues that because neither wife purchased a gear license until it was advantageous to do so, it was not fortuitous that neither held a gear license in her own name in 1971 and 1972, and that this indicates they were not business partners.

We find this argument unpersuasive. First, the above quoted language of fortuity was intended to express our disapproval of the arbitrariness inherent in awarding one business partner a permit because he, rather than the other partner, happened as a matter of chance to hold the gear license in 1971 and 1972. We did not intend to suggest that the Commission examine case by case whether it was in fact a matter of chance that one partner held the license while the other did not.

█ Second, the logical connection between "non-fortuity" of license holding and the non-existence of a business partnership is tenuous at best. The fact that the hus-

---

**6.** *But cf. Refrigeration Engineering Co. v. McKay,* 4 Wash.App. 963, 486 P.2d 304, 312 (1971) (No partnership where nothing indicated an agreement that the wives would participate in the profits "as entities separate from their husbands"); *Cooper v. Spencer,* 218 Va. 541, 238 S.E.2d 805, 806 (1977) (No partnership where

evidence did not show a division of the profits, except that both parties lived off the proceeds); A. Bromberg, *Crane and Bromberg on Partnership* § 14, at 68–69 (1968) (The mere deposit of business receipts in a joint bank account may not necessarily indicate profit sharing in a family setting).

band consistently held the license may be attributable to other factors, such as traditional sex roles or the convenience of one person holding both the gear license and the commercial license, combined with the previously mentioned incentives for only the husband to hold a commercial fishing license.

Finally, we note that fortuity of license-holding does not appear to be a criterion used by the Commission to determine partnerships in the non-marital context. In *Cashen v. CFEC*, 686 P.2d 1219 (Alaska 1984), we discussed the retroactive application of *Templeton* to a partner who, like the appellants, did not hold a gear license until 1973.[7] In that case the Commission did not indicate that this was an argument against the existence of a partnership.

■ We turn now to the question of what factors validly can be considered to determine the existence of a business partnership between married persons. Alaska partnership law is governed by the Uniform Partnership Act, adopted by the Alaska legislature in AS 32.05. The U.P.A. defines a partnership as "an *association* of two or more persons to carry on as *co-owners* a *business* for *profit*." AS 32.05.010 (emphasis added). Contained in this definition are the key elements of a partnership.

■ The associational element requires the existence of an agreement to combine the spouses' property, money, effects, skill, and knowledge to carry out a business enterprise. *Northern Lights Motel, Inc. v. Sweaney*, 561 P.2d 1176, 1187 (Alaska 1977). Because of the mutual trust that exists in the typical marriage, this agreement might not be formalized and can be implied from the facts and circumstances of the case where the partnership is formed after the marriage. *Id.; Stephens v. Stephens*, 213 S.C. 525, 50 S.E.2d 577, 579 (1948) (no written agreement between husband and wife, but their actions evinced a contract "to place their money, effects, labor and skill or some or all of them in lawful commerce or business").

■ Co-ownership of the business has been described as the most important characteristic of a partnership. A. Bromberg, *supra* note 6, § 14, at 65. One aspect of co-ownership is the existence of a right in each partner to exercise authority in the management of the enterprise. "Although each venturer need not exercise actual physical control of the instrumentalities used in the enterprise each must have a legal right to some voice in the direction and control of the enterprise." *Northern Lights Motel*, 561 P.2d at 1187. Again, this power can be implied from the facts where the business co-exists with marriage. In this regard, the nature of the spouse's participation in the day to day operation and the long range planning of the business can be considered.

■ Profit-sharing is another component of the co-ownership requirement. Ordinarily, profit-sharing is prima facie evidence of a partnership, AS 32.05.020(4), but some degree of profit-sharing is common in marriages whether or not a business partnership exists. Thus, it may be more appropriate for the Commission to focus on the actual ownership of the business property as evidence of partnership.

■ The U.P.A. provides that "[j]oint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether or not the co-owners share any profits made by the use of the property." AS 32.05.-020(2). This leads to the third element of the partnership definition: the partners must be in business. Co-ownership becomes business when a certain degree of activity is carried on or contemplated. A. Bromberg, *supra* note 6, § 12, at 57. Since commercial fishing is by definition a business activity, this criterion ordinarily will be met. But the extent of the spouse's

---

7. Cashen fished in the southeast Alaska salmon troll fishery. By 1973 there was a well-documented "gear rush" in anticipation of Limited Entry. *See* Owers, *Court Tests of Alaska's Limited Entry Law*, 11 U.C.L.A.-Alaska L.R. 87, 91 (1981).

participation in the fishing business also can be helpful in determining whether she is participating as a business partner. A spouse who works at another job or who keeps house ashore certainly is furthering the interests of the marriage, but is only indirectly putting her skill and efforts into the *fishing* partnership. Such a spouse fairly may be said not to be engaged in a business partnership; in terms of the statutory hardship standards she is less dependent on operating gear for her income than the fishing spouse.[8]

**8.** The fourth element of a partnership is that the enterprise must be intended to make a profit. Thus, labor unions, churches, and other non-profit organizations may not be considered partnerships. A. Bromberg, *supra* note 6, § 13, at 63. Assuming as we do that virtually all fishing ventures, whether or not they are partnerships, aim to make sufficient profit for the participants to survive the off-season, we do not discuss this as a factor used to distinguish partnerships from non-partnership fishing businesses.

**9.** *Meads v. Stott,* 193 Or. 509, 238 P.2d 256, 266 (1952); *P & M Cattle Co. v. Holler,* 559 P.2d 1019, 1022 (Wyo.1977); *Buffandeau v. Shin,* 60 Haw. 280, 587 P.2d 1236, 1237 (1978); *Nelson v. Seaboard Surety Co.,* 269 F.2d 882, 886 (8th Cir.1959); *Potucek v. Blair,* 176 Kan. 263, 270 P.2d 240, 243 (1954).

**10.** Chocknok and Andrew also raise a variety of other claims of deficiencies in the Commission's determinations. We dispose of these claims summarily.

Appellants assert that even if it is determined that they were economically dependent upon the fishery only as crewmembers in 1971 and 1972, rather than as partners, they are still entitled to income dependence points. They maintain that the statutory mandate that entry shall be controlled without unjust discrimination, AS 16.43.010(a), requires the Commission to consider the income dependence of crewmen. Our recent decision in *Kalmakoff v. CFEC,* 693 P.2d 844 (Alaska, 1985), is dispositive; we held there that the Commission need not consider crew members' income dependence.

Appellants claim that by changing its long-standing policy of allowing spouses to allocate investments points between them, the Commission discriminated against them vis-a-vis similarly situated applicants whose cases were decided earlier. They argue that such changes in policy should be made through rule-making provisions of the Administrative Procedure Act. We find these arguments to be without merit. The Commission has not changed a regulation,

We recognize that determinations of partnership between spouses will depend on the particular facts of each case. There is no single or conclusive test for a partnership that will suffice in every situation.[9] The Commission must consider the traditional partnership factors and apply them evenhandedly to all applicants, making sure that the criteria used are not unjustly discriminatory in intent or impact.

We REVERSE and REMAND to the Commission for further proceedings consistent with this opinion.[10]

but has corrected a policy. It is well established that the choice between modifying an existing agency policy by rule or by individual ad hoc litigation is one that lies in the informed discretion of the agency. *See S.E.C. v. Chenery Corp.,* 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995, 2002 (1947).

Andrew separately attacks the Commission's decision to award her three investment points rather than four and one-half as were awarded to Chocknok. At issue here is the Commission's interpretation of 20 AAC 05.620(2), which provides that the points of an applicant who co-owns vessels or gear will be determined by multiplying her percentage of ownership interest times the total number of points possible. The confusion arises because 20 AAC 05.-630(b)(3) specifies that ownership of a vessel is worth six points and ownership of gear is worth three points, but a maximum of only six points can be claimed by an applicant. Hence, the question is whether "the total number of points possible" refers to the total raw points available or the total that can be claimed by an individual. The Commission initially followed the former interpretation, but changed to the latter interpretation of the regulation in its adjudicatory decisions. We hold that this interpretation is reasonable as a policy determination that two people co-owning a vessel and gear collectively should not fare better than one person. *See Rose v. CFEC,* 647 P.2d 154, 161 (Alaska 1982).

Finally, appellants claim that their due process rights were violated by the change of hearing officers between the time of the hearing and the time the recommended decision was issued. They argue that their credibility was at issue and that due process is violated if the deciding officer had no opportunity to observe the demeanor of the witnesses. While it may be preferable that decisions involving the applicants' credibility be made by the officer who took their testimony, in this situation we do not find this to be a requirement of due process. *See Utica Mutual Insurance Co. v. Vincent,* 375 F.2d 129, 131 (2nd Cir.1967), *cert. denied,* 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 102 (1967).