Joe B. HALL, Appellant,

v.

TWS, INC., a Georgia Corporation,
Appellee.

No. S–10878.

Supreme Court of Alaska.

June 10, 2005.

Richard W. Wright, Fairbanks, for Appellant.

Douglas L. Blankenship, Blankenship Law Office, Fairbanks, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

In an action to collect on a judgment against Raymond Moore, TWS, Inc. obtained a charging order against his interest in a purported mining partnership with Joe B. Hall and subsequently purchased his interest at a foreclosure sale and sued to dissolve the partnership. The superior court found that, although Moore and Hall formed a partnership at will in 1990, the partnership was dissolved in 1993 when Hall filed for bankruptcy and no new partnership was subsequently created. Accordingly, the court ruled that Moore and Hall held the mining claims as tenants in common and, therefore,

that TWS could reach Moore's fifty percent interest in the claims to satisfy its judgment against him. We affirm.

## II. FACTS AND PROCEEDINGS

Hall and Moore purchased thirty-five mining claims[1] in 1990 in the name of "Ray Moore and Joe B. Hall d/b/a Golden Slipper II." Shortly thereafter, Moore approached Clifford Cook, a childhood friend and a resident of Georgia, for funds to pay expenses related to annual labor and filing fees in exchange for an ownership interest in part of the claims. Cook continued to provide Moore with funds until 1996 when, after traveling to Fairbanks to formalize their business relationship, Cook determined that Moore did not intend to grant him an ownership interest in the mining claims. Cook subsequently obtained a judgment against Moore in Georgia to recover the funds he had advanced, and he sued in Alaska for recognition and enforcement of that judgment. In April 1999 the superior court entered judgment against Moore in the amount of $57,508.89, and Cook later assigned this judgment to TWS, Inc., a Georgia corporation owned by Cook.

To collect on this judgment, Cook attempted to seize Moore's shares in Golden Slipper II, Inc., a corporation owned jointly by Moore and Hall. Cook believed that the corporation owned the Marshall Dome claims or some other assets. During a deposition with Hall in November 1999, however, Hall testified that the claims were not held by Golden Slipper II, Inc., a corporation, but by Golden Slipper II, a mining partnership formed through an oral partnership agreement between Hall and Moore. Hall testified that he and Moore each owned a fifty percent share of the partnership, but that they had assigned a thirty-five percent interest in the partnership proceeds to two attorneys who had provided legal representation to the partnership and to Hall personally. Hall testified that no other parties had an interest in the partnership. Hall also testified that he had filed for bankruptcy in 1993. While he was uncertain whether the bankruptcy was discharged in 1995 or 1997, the record shows that the bankruptcy trustee sold his interest in the claims in 1996.[2]

In December 1999 Cook obtained a charging order against Moore's individual interest in the partnership, and the partnership was ordered to distribute to Cook all earnings and withdrawals that would be payable to Moore.[3] This order also granted Cook authority to sell Moore's interest at a foreclosure sale, and TWS subsequently purchased Moore's interest at a foreclosure sale held in February 2000. Immediately thereafter, TWS notified Hall of its purchase and demanded that the partnership provide it with records related to the partnership and its ownership of the mining claims. After reviewing some of the records, TWS recommended that the partnership be dissolved and its assets distributed to Hall and TWS. Hall later informed TWS that Moore had assigned his entire interest to other creditors prior to the foreclosure sale and that TWS had consequently purchased no interest in the partnership. TWS suspected that the alleged assignments were an attempt to prevent collection and brought suit against Hall, Moore, and Golden Slipper II, alleging that no partnership existed and that the claims were held by Moore and Hall as tenants in common and, in the alternative, for appointment of a receiver and for dissolution of the

---

1. These claims are known as the Marshall Dome claims.

2. In 1998 the superior court rescinded the trustee's sale of Hall's interest in the Marshall Dome claims and Hall apparently regained his interest in the claims pursuant to court order. The record is unclear why the sale was overturned, but Hall's motion for reconsideration alleges that it was due to fraud by the buyer, Silverado Mines (U.S.), Inc. Apparently, Silverado Mines is currently developing the mines pursuant to a prior purchase agreement with Hall and Moore.

3. *See* former AS 32.05.230(a) (judgment creditor can obtain charging order and foreclose on partners' interest). A charging order is generally the exclusive remedy for a creditor seeking to reach a partner's interest in a partnership. While the creditor can foreclose on this interest at a foreclosure sale, the assets of the partnership cannot be reached absent a judicial decree of dissolution. BROMBERG & RIBSTEIN ON PARTNERSHIP §§ 3.05(d)-(d)(3)(v), at 3:91–3:106 (Aspen 2004).

partnership. Moore did not defend in the superior court.

During the course of the litigation, Hall and Golden Slipper II failed to respond to discovery requests served by TWS, despite two orders by the superior court compelling Hall to provide the information, which was relevant to whether Moore and Hall owned the mining claims as tenants in partnership or as tenants in common. Unable to adequately prepare for trial, TWS filed a motion for sanctions, which the superior court resolved at trial by limiting Hall's defense to evidence it had already produced, consisting primarily of his 1999 deposition testimony and attachments. Hall's counsel agreed to this limitation without objection. While the superior court suggested that Hall's failure to provide the requested information was "willful or contemptuous," the parties agreed to proceed with trial so long as evidence to support Hall's defense was limited to information provided to TWS before trial. This ruling prevented Hall from introducing additional evidence to prove the existence of a partnership with Moore, as well as records relating to his bankruptcy.

TWS argued that Moore and Hall owned the claims as tenants in common, but that, if a partnership did exist, the court should appoint a receiver and dissolve the partnership so that its assets could be distributed to Hall and TWS. Hall defended that the claims were owned by a partnership formed in 1990 with the purchase of the Marshall Dome claims. According to Hall, the partnership agreement was oral but its existence was proven by a 1990 deed made out in the name of "Ray Moore and Joe B. Hall d/b/a/ Golden Slipper II." The alleged partnership had no letterhead, phone number, bank account, or tax identification number, nor did it ever file federal income tax returns. For many of the years in question, Hall filed tax returns as a sole proprietor, listing his business name as Golden Slipper II.

The superior court noted that, even if Hall and Moore had formed a partnership in 1990, it would have been dissolved by operation of law when Hall filed for bankruptcy in 1993.[4] If the partnership was dissolved in 1993 and not subsequently re-formed, the contested mining claims would have been held by Moore and Hall as tenants in common, rendering the suit unnecessary. After it became clear that neither the parties nor their attorneys were well-versed in the law of partnership and did not understand the potential implications of the bankruptcy petition, the court adjourned to permit them to research the impact of Hall's 1993 bankruptcy on the continued existence of the Golden Slipper II partnership. When the trial resumed, Hall argued that, although the partnership was dissolved in 1993, it was immediately re-formed with the same assets. In support of this argument, he cited evidence that allegedly proved the existence of a partnership after 1993, including the superior court's decision to grant Cook a charging order against Moore's interest in the Golden Slipper II partnership, correspondence between Cook and Hall after the foreclosure sale referencing partnership property, Hall's deposition testimony, and other litigation on behalf of Golden Slipper II to quiet title in the mining claims.[5]

The court ultimately concluded that Hall and Moore formed a partnership in 1990, that the partnership was dissolved when Hall filed for bankruptcy in 1993, and that no new partnership was subsequently created. The court further found that, if the partnership had survived the bankruptcy, the court was compelled by law to dissolve it and order distribution of its assets. The superior court relied upon AS 32.05.270(b), which states that "[o]n the application of the purchaser of a partner's interest [at a foreclosure sale] the court *shall* decree a dissolution ... at any time if the partnership was a partnership at will when the interest was assigned or the charging order was issued." (Emphasis added.) Hall's counsel stated during trial that

---

4. Citing AS 32.05.260 (causes of dissolution).

5. *See supra,* note 2. It should be noted that the superior court orders from this litigation refer to Golden Slipper II as a corporation, not a part-

nership. These orders were prepared by Golden Slipper II's attorney, Barry Donnellan, who presumably knew whether he was representing a partnership or a corporation.

the partnership was at will, and no evidence to the contrary was presented at trial. While Hall's counsel later retracted this statement, and claimed instead that the parties intended the partnership to continue until the mining operation was completed, the superior court's findings of fact rely upon the in-court admission. Thus, according to the superior court, Moore and Hall owned the claims as tenants in common and TWS could foreclose on Moore's one-half interest.

Hall moved for reconsideration in February 2002 claiming that the partnership continued after Hall's bankruptcy, but this motion was stricken because it attempted to present new evidence not introduced at trial. Hall again moved for reconsideration in October 2002 and this motion was denied. The court also awarded fees and costs in favor of TWS. Hall appeals.

## III. STANDARD OF REVIEW

 Whether Hall and Moore formed a partnership in 1990 or subsequent to Hall's discharge from bankruptcy is a question of fact, which we review for clear error.[6] We will find clear error only if, after a thorough review of the record, we come to a definite and firm conviction that a mistake has been made.[7] We review an award of attorney's fees for abuse of discretion.[8] We can affirm a decision of the superior court on any basis supported by the record.[9]

## IV. DISCUSSION

Joe B. Hall appeals the superior court's ruling that he and Moore hold the Marshall Dome claims as tenants in common and the court's award of costs and fees to TWS. Hall argues that the superior court erred by failing to accord proper weight to evidence allegedly demonstrating the continued existence of a partnership after the 1993 bankruptcy. He points to superior court orders entered after 1993 that refer to Golden Slipper II, Hall's deposition testimony, TWS's initial complaint that alleged the existence of a partnership, and other documentary evidence that purportedly supports the existence of a partnership after Hall's 1993 bankruptcy. Hall also argues that the superior court misunderstood partnership law when it ruled that Golden Slipper II could not continue after Hall's bankruptcy.

Whether Hall and Moore owned the Marshall Dome claims as tenants in partnership or tenants in common affects whether and how TWS can reach the claims to satisfy its judgment against Moore. Partnership property is generally shielded from execution to satisfy a partner's personal debts,[10] so if the claims are held as tenants in partnership TWS could only foreclose on Moore's interest in the partnership, which is his share of the profits and surplus.[11] After TWS purchased Moore's interest, it could reach the mining claims only if it requested a judicial decree of dissolution, which is granted only if a partnership is at will.[12] But if Hall and Moore purchased the claims as tenants in common, or if the partnership dissolved in 1993 when Hall filed for bankruptcy[13]—converting their partnership into a tenancy in common[14]—

6. *Parker v. N. Mixing Co.*, 756 P.2d 881, 887–88 n. 11 (Alaska 1988).

7. *Rausch v. Devine*, 80 P.3d 733, 737 (Alaska 2003).

8. *Alderman v. Iditarod Props., Inc.*, 32 P.3d 373, 380 (Alaska 2001).

9. *Rausch*, 80 P.3d at 737.

10. *See* AS 09.38.100(b) (partner's right in specific partnership property is exempt except on claim against partnership).

11. *See* former AS 32.05.210 (partner's interest in partnership is his share of profits and surplus).

12. Former AS 32.05.270(b)(2) (upon application from one who purchases partner's interest at

foreclosure sale court shall decree dissolution if partnership is at will).

13. Former AS 32.05.260(5) (dissolution of partnership caused by bankruptcy of any partner).

14. If the partnership dissolved in 1993, Hall and Moore would also hold the claims as tenants in common. *See Simpson v. Kistler Inv. Co.*, 713 P.2d 751, 762 (Wyo.1986) (partnership realty which need not be liquidated passes to former partners, and heirs and assigns, as tenants in common); *see also Jacoby v. Feldman*, 81 Cal. App.3d 432, 146 Cal.Rptr. 334 (Cal.App.1978); *Engleking v. Estate of Engelking*, 686 N.E.2d 932, 934 (Ind.App.1997) ("Where a partnership is dissolved, its debts paid, and its affairs [wound] up, undistributed partnership property belongs to the former partners as joint tenants or tenants in

TWS could foreclose directly on Moore's interest in the underlying claims.[15]

### A. Hall and Moore Formed a Partnership that Terminated when Hall Filed for Bankruptcy.

As a preliminary matter, we note that mining partnerships are governed by the Uniform Partnership Act (UPA),[16] which was recently repealed and reenacted in Alaska with amendments.[17] Because this action concerns events that occurred and rights that accrued prior to the effective date of the revised Uniform Partnership Act, it is governed by former AS 32.05.[18] Hall bears the burden of proving, by a preponderance of the evidence, the existence of a partnership.[19]

The superior court found that Hall and Moore formed a partnership in 1990 with the purchase of the Marshall Dome mining claims, that this partnership was at will, and that it was dissolved in 1993 when Hall filed for bankruptcy. In the alternative, it ruled that, if the partnership survived Hall's bankruptcy, it was judicially dissolved. Based upon the evidence presented at trial, these factual determinations are not clearly erroneous.

### 1. Hall and Moore formed a mining partnership.

A partnership is defined as "an association of two or more persons to carry on as co-owners a business for profit."[20] We have previously noted that AS 32.05.010(a) consists of four key elements.[21] The first element is associational intent, which requires "the existence of an agreement to combine the [partners'] property, money, effects, skill and knowledge to carry out a business enterprise."[22] Where, as here, there is no written partnership agreement, the existence of a partnership "may be proven by the transactions, conduct and declarations" of the parties.[23] While the parties' intent to create a partnership is typically one of the most important tests for whether a partnership exists, this is not true where the rights of third parties are involved.[24] In the absence of a written agreement, the existence of a partnership must be proven by credible evidence.[25]

The second element is co-ownership of the business, which is evidenced by shared man-

common."); *Zimmerer v. Clayton,* 7 N.J.Tax 15, 22 (N.J.Tax 1984) (discussing similarities and difference of partnerships and tenancies in common); *Miernicki v. Seltzer,* 312 Pa.Super. 166, 458 A.2d 566, 570 (1983).

**15.** AS 09.38.100(a) (creditor of individual who owns property as tenant in common can obtain a levy on and sell interest of individual in property).

**16.** *See Innes v. Beauchene,* 370 P.2d 174, 176 (Alaska 1962) (applying UPA to determine existence of mining partnership).

**17.** *See* Ch. 115, §§ 6, 8, SLA 2000 (repealing AS 32.05 and enacting AS 32.06 effective Jan. 1, 2004).

**18.** Ch. 115, § 10, SLA 2000. The act states that the revised UPA does not govern actions or proceedings begun or a right that accrued prior to January 1, 2001. Cook obtained a charging order against Moore's interest in Golden Slipper II in December 1999, foreclosed on this interest in February 2000, and TWS filed its original complaint in October 2000.

**19.** *Wigger v. Olson,* 533 P.2d 6, 6–7 (Alaska 1975) (plaintiff failed to carry burden of showing existence of partnership); *see also Cavanah v. Mar-*

*tin,* 590 P.2d 41, 42 (Alaska 1979) (applying preponderance of evidence standard to prove existence of partnership); *Innes,* 370 P.2d at 179 (Arend, J. dissenting) (burden of proving partnership rests with party asserting its existence); *Bernard v. Vatheuer,* 303 Or. 410, 737 P.2d 128 (1987) (existence of oral partnership agreement must be proven by preponderance of evidence).

**20.** Former AS 32.05.010(a).

**21.** *Chocknok v. State, Commercial Fisheries Entry Comm'n,* 696 P.2d 669, 675–76 (Alaska 1985).

**22.** *Id.* (citing *N. Lights Motel, Inc. v. Sweaney,* 561 P.2d 1176, 1187 (Alaska 1977)).

**23.** *Innes,* 370 P.2d at 176; *see also Parker v. N. Mixing Co.,* 756 P.2d 881, 887 n. 11 (Alaska 1988) (intent to create partnership can be inferred from actions of partners).

**24.** 59A Am Jur 2d, *Partnership* § 136 (2003); *see also id.* at § 133 (partnership by estoppel exists for benefit of third parties, not alleged partners).

**25.** *Id.* at § 90.

agement authority and profit-sharing.[26] The third element is that the partners must be in business,[27] and the fourth is that the business must be intended to make a profit.[28]

Mere co-ownership of the Marshall Dome claims is insufficient evidence of the existence of a partnership because "joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether or not the co-owners share any profits made by the use of the property,"[29] but receipt of a share of business profits is prima facie evidence that the person is a partner.[30]

The superior court found that Hall and Moore created a partnership in 1990 when they purchased the Marshall Dome claims in the name of Ray Moore and Joe B. Hall d/b/a/ Golden Slipper II. While there was no written partnership agreement, the record contains credible evidence that the parties acted as if they had formed a partnership. Hall testified that annual filings and payments required by the state to maintain the claims were paid in the name of Golden Slipper II. In his deposition, Hall indicated that he and Moore had assigned thirty-five percent of their interest in the claims' proceeds to two attorneys who had represented the partnership. Such an arrangement is consistent with the Uniform Partnership Act, which permits the assignment of a partner's share of the profits from a partnership.[31]

Ultimately, the superior court found that this evidence supported the finding that Hall and Moore created a partnership in 1990, particularly because they had no reason to hold themselves out as partners if they were not, and because there was no evidence to contradict the existence of a partnership prior to 1993.

### 2. The partnership dissolved when Hall filed for bankruptcy.

■ The superior court found that Golden Slipper II dissolved by operation of law in 1993 when Hall filed for personal bankruptcy. Hall does not dispute this finding. The Uniform Partnership Act states that a partnership is dissolved by the bankruptcy of any partner.[32] After dissolution, partners are unable to conduct any partnership business except for that which is necessary to wind up partnership affairs or to complete any pending transactions.[33] A partnership is not terminated upon dissolution, but continues until all partnership affairs have been wound up,[34] a process that involves payments to creditors and distributions to partners.[35] The superior court found that the partnership effectively wound up before the 1995 purchase agreement for the claims between Hall and Moore and Silverado Mines.[36] Because the partnership dissolved in 1993, the superior court correctly found that Hall and Moore owned the Marshall Dome claims as tenants in common.

26. *Chocknok,* 696 P.2d at 675.

27. *Id.*

28. *Id.* at 676.

29. Former AS 32.05.020(2).

30. Former AS 32.05.020(4).

31. *See* former AS 32.05.220 (permitting assignment of partner's share of profits).

32. Former AS 32.05.260(5).

33. Former AS 32.05.300; *see also* BROMBERG & RIBSTEIN ON PARTNERSHIP § 7.05(b)(1), at 7:85 (Aspen 2004) (bankruptcy automatically terminates authority of bankrupt partner).

34. Former AS 32.05.250.

35. *See, e.g.,* HAROLD GILL REUSCHLEIN & WILLIAM A. GREGORY, THE LAW OF AGENCY AND PARTNERSHIP § 227, at 343 & n. 4 (2d ed.1990) (discussing winding up as process of completing old business, collecting and paying debts, and distributing remaining assets to partners).

36. The only pieces of evidence supporting the finding that the partners wound up the partnership were the 1995 sale of the Marshall Dome claims to Silverado Mines (U.S.), Inc. and the 1996 sale of Hall's interest in the claims by the bankruptcy trustee. Nonetheless, if the partners continued the partnership without winding up its affairs they acted in excess of their authority. *See* former AS 32.05.280 (dissolution terminates authority of partner to act for partnership except as necessary to wind up partnership affairs or complete transactions begun but not completed).

### 3. The argument that the partnership continued after it was dissolved was waived.

Though Hall does not dispute that his bankruptcy dissolved the partnership, he argues that a new partnership called Golden Slipper II existed after the 1993 bankruptcy. While at trial he argued that he and Moore formed a new partnership immediately after his 1993 bankruptcy, Hall claims on appeal that he and Moore elected to continue their existing partnership rather than wind it up. Because this argument was not raised below, it is waived.[37]

### 4. No new partnership was created.

The Marshall Dome claims were held by a partnership after 1993 only if Hall and Moore formed a new partnership with the same assets. The four considerations described in former AS 32.05.010(a) that are relevant to whether a partnership was formed in 1990 apply to the question whether Hall and Moore formed a partnership post-bankruptcy.[38] The superior court found no credible evidence to support Hall's claim that a new partnership was formed after 1993. Indeed, the evidence to the contrary was overwhelming. Hall's tax returns listed Golden Slipper II as a sole proprietorship,[39] a 1995 agreement by Hall and Moore to sell their interest in the mining claims to Silverado Mines was executed in their individual capacities, and funds received from Silverado pursuant to this agreement were paid to Hall and Moore individually.

■ The only documentary evidence tending to show that Moore and Hall acted as if they were partners was a deed, signed by both of them individually and on behalf of Golden Slipper II, a mining partnership, transferring the Marshall Dome claims to Silverado Mines (U.S.), Inc. We are not persuaded by this deed that the superior court's finding was clearly erroneous because of the mass of contrary evidence and the irregularity of the transaction. This sale occurred during the pendency of Hall's bankruptcy, as evidenced by the fact that the bankruptcy trustee sold Hall's interest in the same property approximately six months later. Because the partnership dissolved upon the filing of Hall's Chapter 7 bankruptcy petition in 1993, this sale is best viewed as part of the winding-up process. It certainly does not provide evidence of a new partnership, since an individual in bankruptcy cannot contribute his assets from a dissolved partnership to a new partnership without permission from the bankruptcy trustee.

Because Hall's interest in the mining claims—whether as a tenant in partnership or a tenant in common—was held by the bankruptcy trustee,[40] any proceeds due to Hall from the 1995 sale of the Marshall Dome claims should have been paid to creditors of his bankruptcy estate. It is unclear how Moore and Hall even entered into the 1995 contract with Silverado Mines and why this contract remains in force although the bankruptcy trustee's 1996 sale was rescinded. In any event, the deed's probative value as

---

**37.** Although Hall raised the argument in his motion for reconsideration that Golden Slipper II survived the bankruptcy petition, the motion was denied because it attempted to introduce new evidence not presented at trial. Because this argument was not timely raised below it is waived. *Reid v. Williams,* 964 P.2d 453, 456 (Alaska 1998) (this court "will not ordinarily consider issues unless they were raised in the trial court").

**38.** *See* supra Part IV.A.1. Former AS 32.05.010(a) identifies four key elements for determining the existence of a partnership. The parties must intend to combine assets, knowledge or abilities to carry out a business enterprise, they must co-own the business—as evidenced by shared management and/or profit-sharing, the partners must be in business, and

the business must be for-profit. *See generally Chocknok v. State, Commercial Fisheries Entry Comm'n,* 696 P.2d 669, 675–76 & n. 8 (Alaska 1985).

**39.** While we have previously held that the failure to file a partnership tax return is only conclusive of "ignorance of the tax laws," *Chocknok,* 696 P.2d at 674, it is nonetheless relevant to a determination of whether a partnership was formed.

**40.** *See* 11 U.S.C.A. § 541(a)(1) (2004) (bankruptcy estate comprised of all property in which debtor has legal or equitable interest); *see also In re Shearin,* 224 F.3d 346, 349 (4th Cir.2000) (on filing bankruptcy petition, debtor transfers partnership interest to bankruptcy estate); *In re Sunset Developers,* 69 B.R. 710, 712 (Bankr.D.Idaho 1987) (same).

evidence that a partnership existed is marginal. This is particularly true since other documents related to the transaction with Silverado Mines were executed by Hall and Moore in their individual capacities.

Hall also claims that the superior court failed to grant proper weight to a 1998 ruling in a quiet title action apparently brought by Golden Slipper II, Inc. against Silverado Mines that Hall claims demonstrates the existence of a partnership in 1998. While Hall acknowledges that this litigation cannot have preclusive effect because the parties were different and the existence of a partnership was not litigated,[41] it also appears that this action was litigated in the name of the Golden Slipper II corporation rather than the Golden Slipper II partnership. The superior court ruled at trial that it would not rely on the order as evidence that a court had found a partnership to exist, but rather as evidence that Hall and Moore held themselves out as partners. Because the order could not have preclusive effect, the superior court had no reason to rely upon it as anything but evidence that Hall and Moore held themselves out as partners.

Because the weight of the evidence supports the trial court's conclusion that no new partnership was created after 1993, there is no clear error.[42]

### B. The Superior Court Did Not Err in Awarding Attorney's Fees and Costs.

The superior court awarded fees and costs to TWS according to Alaska Civil Rules 82(a) and 79. Hall argues that this award was inappropriate since Hall prevailed on the only issue of individual concern, his one-half ownership of the mining claims. Hall misrepresents the nature of this litigation. TWS never contested Hall's one-half ownership of the claims, but rather that the claims were held by Hall and Moore as tenants in common rather than tenants in partnership. TWS prevailed on this claim.

Hall also argues that the partnership should pay any fees and costs since Hall acted as a fiduciary to maintain the existence of the partnership. But the partnership dissolved by operation of law in 1993 when Hall filed for bankruptcy and the former partners subsequently held the claims as tenants in common. It appears that Hall's motivation in arguing the continued existence of the partnership was not to ensure the continued development of the claims, but to shield the claims from collection by TWS by classifying them as partnership property exempt from execution. A party cannot invoke the existence of a partnership to thwart collection on a valid judgment. TWS prevailed below and Hall was properly charged with payment of costs and fees.

## V. CONCLUSION

Because Golden Slipper II dissolved when Hall filed for bankruptcy in 1993, and because Hall and Moore did not form a new partnership after that time, we AFFIRM the judgment of the superior court in all respects. TWS may foreclose on Moore's interests in the Marshall Dome mining claims.

---

41. Since the issue of the existence of a partnership was not litigated in the earlier action, and TWS was not a party to that action, "issue preclusion, or collateral estoppel," does not bar TWS from challenging the existence of the partnership. *McElroy v. Kennedy*, 74 P.3d 903, 907 (Alaska 2003) (issue preclusion requires "(1) the party against whom the preclusion is employed was a party to or in privity with a party to the first action; (2) the issue precluded from relitigation is identical to the issue decided in the first action; (3) the issue was resolved in the first action by a final judgment on the merits; and (4) the determination of the issue was essential to the final judgment.").

42. Because we uphold the superior court's conclusion that no new partnership was formed after the 1993 bankruptcy, we need not address whether the court had the power to dissolve Hall and Moore's alleged post–1993 partnership.