Fedor Z. KUZMIN, Appellant,

v.

STATE of Alaska, COMMERCIAL
FISHERIES ENTRY COM-
MISSION, Appellee.

No. S–13115.

Supreme Court of Alaska.

Dec. 11, 2009.

Michael Hough, Homer, for Appellant.

Vanessa M. Lamantia, Assistant Attorney General, and Richard A. Svobodny, Acting Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, WINFREE, and CHRISTEN, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

The Commercial Fisheries Entry Commission (CFEC) denied Fedor Kuzmin's limited entry crab permit application because it found that he had insufficient points. Kuzmin appeals, arguing that the CFEC abused its discretion by refusing to credit him points based on crab deliveries he allegedly made as a partner in his son Romil's 2001 fishing operation. Because substantial evidence supported the CFEC's finding that Kuzmin was not in joint control of Romil's 2001 fishing operation, as 20 Alaska Administrative Code (AAC) 05.834(c) required, we affirm the superior court order affirming the CFEC decision that denied Kuzmin's entry permit application.

## II. FACTS AND PROCEEDINGS

In 2004 Fedor Kuzmin applied to Alaska's Commercial Fisheries Entry Commission for an entry permit to the Kodiak *bairdi* Tanner crab pot fishery. This permit was required because the Limited Entry Act, which promotes the conservation and sustained yield management of Alaska's fisheries,[1] designates the Kodiak crab fishery as one that requires limitation of entry.[2] The CFEC allocates a maximum of 180 entry permits to the Kodiak *bairdi* Tanner crab pot fishery each year, ranking applicants according to their degree of economic dependence on the fishery and the extent of their past participation in the fishery.[3]

The CFEC has established a zero-to-sixty point scale for the Kodiak crab fishery.[4] An applicant can claim a maximum of twenty points for past participation in the fishery,

---

1. AS 16.43.010–.990.

2. AS 16.43.100 (delegating power to "designate ... particular species for which ... entry permits will be issued" to CFEC); 20 AAC 05.310(e)(3) (2008).

3. AS 16.43.250 (instructing CFEC to adopt regulations for ranking applicants for entry permits); 20 AAC 05.320 (2008) (setting maximum number of permits); 20 AAC 05.834 (2008) (establishing point system for ranking permit applications for Kodiak *bairdi* Tanner pot fishery).

4. 20 AAC 05.833(b) (2008).

thirty-five points for consistent participation in the fishery, and five points for economic dependence.[5]

When Kuzmin applied for an entry permit to the Kodiak crab fishery in 2004, he indicated that he had harvested at least 100 pounds of crab in 2001 and more than 5,600 pounds of crab in 1994 from the fishery. Based on the amount he had harvested, Kuzmin claimed that he should be awarded nineteen points for consistent participation. Because he had harvested crab in two separate calendar years, Kuzmin claimed that he should be awarded an additional thirteen points for past participation.

In October 2004 the CFEC sent Kuzmin a letter stating that additional information was needed to classify his application. Despite Kuzmin's claim that he harvested at least 100 pounds of crab in 2001, the letter stated that CFEC did not have any landings attributed to Kuzmin's permit in 2001.

Kuzmin submitted a statement alleging that he went crab fishing in January 2001 with his son Romil. Kuzmin stated that they used Kuzmin's crab pots and fished off Romil's boat as partners, splitting in half both income and expenses. Romil submitted an affidavit stating that Kuzmin worked as a deckhand on Romil's boat in 2001 and was paid in cash. Although Romil stated that he used Kuzmin's pots that year, he referred to Kuzmin as his "deckhand" and did not refer to him as his partner.

In December 2004 the CFEC classified Kuzmin's entry permit application at thirteen points. The CFEC credited Kuzmin with six points for harvesting at least 100 pounds but less than 5,600 pounds of crab in 1994 and seven points for commercially harvesting *bairdi* Tanner crab in one calendar year. The CFEC did not award Kuzmin points based on his claim that he had harvested at least 100 pounds of crab in 2001.

In January 2005 Kuzmin asked the CFEC for an administrative hearing. A hearing was held on May 19, 2005 with Kuzmin and

his counsel appearing telephonically from Cordova. The only witnesses who testified about Kuzmin's 2001 fishing activities were Kuzmin and his son Romil. The hearing officer found that Kuzmin had "not shown with a preponderance of the evidence" that he was in joint control of Romil's 2001 fishing operation and therefore entitled to partnership participation points. Because Kuzmin "did not meet his burden to show the commission's determination was in error," his application was finally classified with thirteen points. Thirteen points was insufficient to qualify for a non-transferable permit, and Kuzmin's application was denied.

Kuzmin submitted to the CFEC a petition for administrative review of the hearing officer's decision. The CFEC denied Kuzmin's petition and "finally den[ied]" his entry permit application by affirming and adopting the hearing officer's decision as its own. Kuzmin requested reconsideration, but following reconsideration the CFEC again upheld the hearing officer's findings and "finally denied" Kuzmin's application.

In September 2006 Kuzmin appealed to the superior court, arguing that the CFEC erred by concluding that he was not entitled to a portion of the deliveries he and his son Romil made in 2001. In April 2008 the court held that substantial evidence supported the CFEC's conclusion that Kuzmin was participating as a crewmember, rather than as a partner, during the 2001 fishing season.

Kuzmin appeals.

## III. DISCUSSION

### A. Standard of Review

■ Kuzmin argues that this is a one-issue appeal focused on whether the CFEC erred in determining that he was not entitled to participation points based on the crab he and Romil harvested together in 2001. When a superior court acts as an intermediate court of appeal in an administrative matter, we independently review the merits of the agency's decision.[6]

5. 20 AAC 05.834.

6. *South Anchorage Concerned Coal., Inc. v. Municipality of Anchorage Bd. of Adjustment*, 172

P.3d 774, 780 (Alaska 2007) (citing *Williams v. Abood*, 53 P.3d 134, 139 (Alaska 2002)).

■ When reviewing an agency decision based on factual findings, we apply the substantial evidence test.[7] Whether Kuzmin fished in a partnership turns on whether he was in joint control of Romil's fishing operation, a question of fact to which we apply the substantial evidence test.[8] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [9]

■ When reviewing an agency's interpretation of its own regulation, we apply the reasonable basis standard of review.[10] We will defer to the agency unless its "interpretation is plainly erroneous and inconsistent with the regulation." [11] This "deferential standard of review properly recognizes that the agency is best able to discern its intent in promulgating the regulation at issue." [12]

### B. Whether the CFEC's Decision Not To Award Kuzmin Points Based on His 2001 Participation Was "Arbitrary, Capricious, an Abuse of Discretion, and Not Supported by Evidence"

The CFEC has promulgated specific regulations governing the permitting process for the Kodiak crab fishery under the Limited Entry Act.[13] Per those regulations, an applicant is eligible to earn "past participation" points based on whether he or she commercially harvested Kodiak *bairdi* Tanner crab as a gear operator in 1993, 1994, 2001, or 2002.[14] An applicant is also eligible to earn "consistent participation" points depending on whether he or she met certain poundage thresholds while working as a "gear operator" during one or more of those years.[15]

The regulations define "gear operator" as "an individual who was physically present on the vessel[,] who was in control or joint control of the commercial fishing operation, and who held a valid interim-use permit for the Kodiak *bairdi* Tanner crab pot fishery." [16] The regulations adopt a rebuttable presumption that an applicant was a crewmember and not a gear operator for the purpose of awarding participation points if the applicant's commercial harvest was less than twenty percent of the "total commercial harvest taken in the fishery and delivered from the vessel during that year." [17] An applicant can rebut the crewmember presumption by showing by a preponderance of the evidence either that "the applicant was the sole gear operator on the vessel at the time the Kodiak *bairdi* Tanner crab were harvested or that the applicant was a partner with one or more other gear operators on the vessel." [18] The Kodiak crab pot fishery regulations also define "partners" to mean "co-owners of a fishing business for profit who participate as gear operators from the same vessel *and are in joint control of the fishing operation.*" [19]

The hearing officer concluded that Kuzmin "ha[d] not shown with a preponderance of the evidence that he was in joint control of the [2001] fishing operation" and accordingly declined to award Kuzmin points for his participation that year. Kuzmin argues that the

7. *Copeland v. State, Commercial Fisheries Entry Comm'n,* 167 P.3d 682, 683 (Alaska 2007) (citing *Jones v. Commercial Fisheries Entry Comm'n,* 649 P.2d 247, 249 n. 4 (Alaska 1982)).

8. *Id.* at 683; *see also Kuzmin v. State, Commercial Fisheries Entry Comm'n,* No. S–10947, 2004 WL 595608 at *4 (Alaska, March 24, 2004).

9. *Nelson v. State, Commercial Fisheries Entry Comm'n,* 186 P.3d 582, 585 (Alaska 2008) (quoting *Cleaver v. State, Commercial Fisheries Entry Comm'n,* 48 P.3d 464, 467 (Alaska 2002)).

10. *Copeland,* 167 P.3d at 683 (citing *Simpson v. State, Commercial Fisheries Entry Comm'n,* 101 P.3d 605, 609 (Alaska 2004)).

11. *Id.* (internal quotation marks omitted) (quoting *Simpson,* 101 P.3d at 609).

12. *Rose v. Commercial Fisheries Entry Comm'n,* 647 P.2d 154, 161 (Alaska 1982) (citing K. DAVIS, ADMINISTRATIVE LAW TREATISE § 7.22, at 105–08 (2d ed., 1979)).

13. 20 AAC 05.830–.836 (2008).

14. 20 AAC 05.834(a).

15. 20 AAC 05.834(b).

16. 20 AAC 05.836(3).

17. 20 AAC 05.834(c).

18. *Id.*

19. 20 AAC 05.836(4) (emphasis added).

CFEC's decision was arbitrary, capricious, unsupported by evidence, and an abuse of discretion. He contends that he proved by a preponderance of the evidence that he was "at least in partnership" with his son Romil and that the CFEC "cannot reasonably believe" otherwise. He additionally argues that the CFEC failed to consider traditional partnership principles and thus was not applying the law "evenhandedly to all applicants."

### 1. Whether substantial evidence supports CFEC's finding that Kuzmin was not in joint control

■ Kuzmin argues that he was "at least" in joint control of Romil's 2001 commercial fishing operation. He contends that he owned the vessel, the gear, and the crab pots and could "hire, fire, direct[,] and control" Romil. He also asserts that he was teaching Romil how to skipper, operate crab gear, select a fishing site in Kodiak, and keep the crab alive for sale. Kuzmin argues he did everything except steer the boat and that Romil, possessing only "minimal skills," did not bring much of anything to the fishing operation. Although Romil may have referred to Kuzmin as a "deckhand," Kuzmin implies that Romil, a Russian-speaking Old Believer, misunderstood the meaning of that word. Kuzmin implicitly argues that his case is more analogous to several other CFEC decisions which found partnerships to exist.

The CFEC responds that Kuzmin did not meet his burden of proving that he was in joint control of the fishing operation as required under 20 AAC 05.834(c). It argues that Kuzmin's claims that he supervised Romil and had the ability to hire, fire, direct, and control Romil are unsupported by the record. The CFEC contends that, although Kuzmin now claims to have done all the work, Romil's testimony before the hearing officer suggested otherwise. The CFEC argues that the cases Kuzmin relies on to support his arguments do not apply here and are otherwise factually distinguishable.

After considering the totality of the circumstances, the hearing officer concluded that Kuzmin had failed to demonstrate by a preponderance of the evidence that he was in joint control of Romil's fishing operation. The hearing officer stated that she based her decision on the following: (1) neither Kuzmin nor Romil testified that Kuzmin was in joint control of the operation; (2) Romil "consistently referred to [Kuzmin] as the deckhand"; (3) there was no evidence Kuzmin's previous season of experience added to the operation given that Romil had previous experience using the boat and pots to fish cod and "knew what to expect with the weather"; (4) Kuzmin never claimed to perform work equally with Romil and admitted that Romil did most of the work to get ready; (5) Romil testified that he did most of the work on board; and (6) Kuzmin acknowledged that he was "probably in the bunk each day when the boat made delivery to the tender."

To support its determination in this case, the hearing officer relied on two prior administrative decisions: *Clark* and *Martin*.[20] Both cases involved entry permit applications to the Kodiak crab fishery. In *Martin*, the hearing officer noted that the applicant had helped to get the operation ready for fishing and contributed some of his own gear to the operation.[21] Martin and the two other men he fished with each testified that they all did the same jobs on board.[22] The hearing officer concluded that the preponderance of the evidence showed that Martin was equally in control of the fishing operation and equally split the landings.[23]

In contrast to Martin, the applicant in *Clark* was denied participation points for the year in which he landed only thirty-three percent of his vessel's catch.[24] He appealed the denial of points, arguing that he was the co-skipper of the vessel.[25] Even though Clark taught the crew how to size and sex

**20.** *Clark*, CFEC File No. 05–007–A (2005); *Martin*, CFEC File No. 04–033–A (2005).

**21.** *Martin*, CFEC File No. 04–033–A at 2.

**22.** *Id.*

**23.** *Id.* at 3.

**24.** *Clark*, CFEC File No. 05–007–A at 1.

**25.** *Id.*

the crab, the hearing officer concluded that his participation sounded more like that of an experienced crewman than that of a partner with joint control.[26] The hearing officer noted that Clark never claimed he was in joint control of the operation and that his testimony was that he was "there to help." [27]

In this case, Kuzmin had no recorded landings from Romil's vessel in 2001. Because his commercial harvest was less than twenty percent of the "total commercial harvest taken in the fishery and delivered from the vessel during that year," there was a rebuttable presumption that he was a crewmember and not a gear operator for the purpose of awarding participation points.[28]

We must next consider whether the CFEC erred in concluding that Kuzmin had failed to rebut that presumption. Although Kuzmin testified that he and Romil were "partners," neither one ever testified that Kuzmin was in joint control of the fishing operation. Romil instead referred to his father as a "deckhand" in his testimony at the hearing. Although it is conceivable that someone working the deck may also be in joint control with the person running the boat, Romil never indicated that this was the case here. Moreover, although Kuzmin testified that he was supposed to be paid for half of the crab delivery, Romil testified that he did not think the money was split fifty-fifty. Romil testified that he and his father had differing ideas about where best to fish, but that they ultimately went where he (not his father) wanted to go.

Although Kuzmin claims on appeal that he taught Romil how to skipper, operate the crab gear, select a fishing site, and keep the crabs alive, these assertions are largely unsupported by the record. Romil testified at the hearing that, although it was his first time crab fishing, "he knew what to expect" and that his father "wasn't really much of a help."

Kuzmin testified that Romil was the one operating the boat and that Kuzmin was—much like the applicant in *Clark*—just "helping" Romil. Kuzmin did not testify that he contributed equal parts labor with Romil and conceded that Romil "did most of the work" switching the pots over so they could be used for crab. Romil similarly testified that he did "most of the work" getting ready to fish.

Although Kuzmin cites several cases in which the CFEC found partnerships to exist, those cases did not involve the Kodiak crab fishery. Those cases involved either the Bristol Bay salmon drift gill net or the Prince William Sound salmon purse seine fisheries.[29] Because "partners" is not a defined term for those fisheries, the determinations in those cases did not turn on whether there was joint control.

We hold that the CFEC's determination that Kuzmin failed to demonstrate joint control was supported by substantial evidence.

### 2. Whether the CFEC applied erroneous standards in deciding the case

█ Kuzmin argues that the CFEC determined the partnership questions in this case under erroneous standards. He contends that the CFEC failed to consider traditional partnership principles and thus did not apply the law "evenhandedly to all applicants." He argues that we have expressly disapproved of using joint decision-making as a factor in the partnership test and that the CFEC should have applied the four-factor test we used in *Chocknok v. State* to determine when a partnership exists between spouses.[30]

The CFEC does not explicitly argue that the *Chocknok* factors are inapplicable in this case. It argues that, to get points for Romil's landings, Kuzmin was required to both (1)

---

26. *Id.* at 1, 4.

27. *Id.* at 4.

28. 20 AAC 05.834(c).

29. *See, e.g., Merritt,* CFEC No. 75–758 (involving dispute with Prince William Sound salmon purse seine fishery); *Petticrew,* CFEC No. 75–374 (involving dispute with Southeast drift gill net); *Kitchok,* CFEC No. 75–335 (involving dispute with Bristol Bay salmon drift gill net); *Balestreri,* CFEC No. 75–233 (same); *Derania,* CFEC No. 75–211 (same); *Nanalook,* CFEC No. 75–670 (same); *Aliotti,* CFEC No. 75–584 (same); *Golia,* CFEC No. 75–692 (same).

30. *Chocknok v. State, Commercial Fisheries Entry Comm'n,* 696 P.2d 669, 675–76 (Alaska 1985).

satisfy the four-part *Chocknok* test, and (2) "additionally prove" under 20 AAC 05.834(c) that he was in joint control of Romil's fishing operation. The CFEC contends that Kuzmin did neither of these two things.

In *Chocknok,* the CFEC denied two women entry permits to the Bristol Bay drift gill net fishery.[31] The issue on appeal was whether the CFEC applied improper standards in determining that the women were not partners in their husbands' respective fishing ventures and therefore not entitled to income dependence points under 20 AAC 05.630(b)(2).[32] In reversing the CFEC's decision, we declined to adopt the five-factor test the CFEC used to determine that the applicants in that case had not been in a fishing partnership with their spouses.[33] We reasoned that adopting the CFEC's test, which considered among other things joint decision-making between the spouses, would "exclude the majority of married women from consideration for special circumstances income dependence points."[34] We stated that, although joint decision-making authority was an important attribute of a typical business partnership, "the absence of joint control d[id] not necessarily disprove the existence of a partnership, since one partner

may be given exclusive management of a partnership by agreement."[35]

We then identified four factors that could be validly considered in determining the existence of a business partnership between married persons.[36] Those factors were: (1) whether there was an agreement, express or implied, to combine the spouses' property, money, effects, skills, and knowledge to carry out a business enterprise; (2) whether the partners were co-owners of a business who shared in its profits and who had a right, either express or implied, to exercise authority in the management of the enterprise; (3) whether the partners were "in business"; and (4) whether the business was intended to make a profit.[37] We observed that "determinations of partnership between spouses will depend on the particular facts of each case.... The Commission must consider the traditional partnership factors and apply them evenhandedly to all applicants, making sure that the criteria used are not unjustly discriminatory in intent or impact."[38] Although *Chocknok* specifically addressed spousal partnerships, the CFEC has since indicated it would apply the *Chocknok* factors to any claim for income dependence points based on an alleged partnership.[39]

---

**31.** *Id.* at 672–73.

**32.** *Id.* at 671. An applicant may be awarded up to ten points based on the percentage of income derived from harvesting the fishery resource while participating as a gear license holder in 1971 and 1972. 20 AAC 05.630(b)(1) (2008). But if "special circumstances" exist to indicate that this percentage does not realistically reflect the applicant's income dependence, the CFEC may award up to ten points based on the applicant's special showing of income dependence. 20 AAC 05.630(b)(2). We have held that being a partner with a gear license holder is a special circumstance justifying an award of income dependence points under 20 AAC 05.630(b)(2). *State v. Templeton,* 598 P.2d 77, 81 (Alaska 1979) (recognizing right of applicant to be considered for income dependence points under special circumstance provisions of 20 AAC 05.630(b)(2) when he or she did not hold gear license but fished as business partner with gear license holder).

**33.** *Chocknok,* 696 P.2d at 673–75. The CFEC developed the five factor-test in an administrative decision. *See Brandon,* CFEC File No. 75–326 (1980). The five factors were: (1) whether the partners exercised joint decision-making authori-

ty; (2) whether the spouses drew income separate and distinct from the other; (3) whether the couple filed a partnership tax return; (4) whether each partner held a commercial fishing license; and (5) whether each partner held a gear license. *Chocknok,* 696 P.2d at 672.

**34.** *Id.* at 673.

**35.** *Id.*

**36.** *Id.* at 675–76.

**37.** *Id.* We reasoned that the last factor will usually be satisfied because "virtually all fishing ventures, whether or not they are partnerships, aim to make sufficient profit ... to survive the off-season." *Id.* at 676 n. 8.

**38.** *Id.* at 676.

**39.** *Merritt,* CFEC No. 75–758 at 22 (stating that, although *Chocknok* was decided in context of spousal partnership, "there is no reason to believe that [the supreme court] would not apply the same test to *any* alleged partnership" (emphasis in original)).

Furthermore, although *Chocknok* involved the calculation of income dependence points, its reasoning would also apply to claims for participation points based on an alleged partnership. The CFEC has also developed a more specific and more rigorous test to determine whether an applicant to the Kodiak crab fishery is entitled to participation points based on his or her alleged partnership with another fisherman.[40] Under that test, "co-owners of a fishing business for profit who participate as gear operators from the same vessel and are in joint control of the fishing operation" are entitled to participation points based on a partner's landings.[41] Although Kuzmin suggests otherwise, this definition does incorporate some of the "traditional partnership factors" addressed in *Chocknok*, including the co-ownership, "in business," and "for-profit" requirements.[42] But subsection .836(4) also requires the applicant to prove he or she was in "joint control." Because the CFEC found Kuzmin had failed to meet his burden of proof on the joint control requirement, any consideration of the traditional partnership factors was unnecessary.

Kuzmin may also be implicitly arguing that joint control is not a valid criterion on which to base a partnership determination. He contends that the CFEC has adopted a requirement that partners be in joint control of the fishing operation even though we explicitly questioned in *Chocknok* the validity of imposing such a requirement in a different context.

We have held that, if the legislature delegates its authority to an agency to formulate policies and to act in the place of the legislature and the agency adopts a regulation under that delegation of authority, we "should not examine the content of the regulation to judge its wisdom, but should exercise a scope of review not unlike that exercised with respect to a statute."[43] If a state agency "has authority to adopt a regulation to implement, interpret, make specific[,] or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless consistent with the statute and reasonably necessary to carry out the purpose of the statute."[44] Because regulations are presumptively valid, the burden of proving invalidity is on the party challenging it.[45]

Kuzmin has not satisfied his burden proving the invalidity of the CFEC's regulation defining a "partner" as one who is in joint control. He does not argue either that a joint-control requirement is inconsistent with legislative intent or that it is not reasonably necessary to carry out the purpose of the statute. We therefore assume that the regulation is valid and hold that the CFEC did not act arbitrarily in declining to award Kuzmin participation points based on his alleged partnership with Romil.

## IV. CONCLUSION

Because substantial evidence supports the CFEC's finding that Kuzmin was not in joint control of Romil's 2001 fishing operation, we AFFIRM the superior court order affirming the CFEC decision that denied Kuzmin's entry permit application.

---

40. 20 AAC 05.834(c), .836(4).

41. *Id.*

42. *Chocknok*, 696 P.2d at 675–76.

43. *Kelly v. Zamarello*, 486 P.2d 906, 911 (Alaska 1971).

44. *Id.* (quoting AS 44.62.030).

45. *State v. Alyeska Pipeline Serv. Co.*, 723 P.2d 76, 78 (Alaska 1986) (citing *Union Oil Co. v. State, Dep't of Natural Res.*, 574 P.2d 1266, 1271 (Alaska 1978)).