*Notice:* *This opinion is subject to correction before publication in the* PACIFIC REPORTER. *Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DAVIS WRIGHT TREMAINE LLP, | ) | |
| | ) | Supreme Court No. S-15004 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-12-04933 CI |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, DEPARTMENT | ) | |
| OF ADMINISTRATION, | ) | No. 6908 - May 9, 2014 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Michael Spaan, Judge.

Appearances: Robert K. Stewart Jr., Davis Wright Tremaine LLP, Anchorage, and John Parnass, Pacifica Law Group, Seattle, Washington, for Appellant. Rachel L. Witty, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee. Susan Orlansky and Jeffrey M. Feldman, Feldman Orlansky & Sanders, Anchorage, for Amicus Curiae Van Ness Feldman, A Professional Corporation.

Before: Fabe, Chief Justice, Winfree, Stowers, and Bolger, Justices. [Maassen, Justice, not participating.]

WINFREE, Justice.

## I. INTRODUCTION

A state agency issued a request for proposals for legal services. A law firm delivered its proposal after the submission deadline, but the procurement officer accepted

the proposal and forwarded it to the evaluation committee. After the agency issued a notice of intent to award that law firm the contract, a second law firm protested, alleging that the evaluation committee made scoring errors and that consideration of the late-filed proposal was barred by a relevant regulation and the request for proposals. The procurement officer sustained the protest, rescinded the original award, and awarded the second law firm the contract. The first law firm then protested, claiming: (1) the second law firm's protest should not have been considered because it was filed after the protest deadline; (2) the first law firm's proposal was properly accepted because the delay in submission was immaterial; and (3) the second law firm's proposal was nonresponsive because that firm lacked a certificate of authority to transact business in Alaska. The procurement officer rejected that protest and the first law firm filed an administrative appeal. The administrative agency denied the appeal, and the first law firm appealed the agency decision to the superior court, which affirmed the administrative agency ruling.

We conclude that the administrative agency acted reasonably in accepting the second law firm's late-filed protest and deeming that firm's proposal responsive notwithstanding its lack of a certificate of authority. We also conclude that the agency's interpretation that its regulation barred acceptance of the first firm's late-filed proposal is reasonable and consistent with statute. We therefore affirm the superior court's decision upholding the final agency decision.

## II. FACTS AND PROCEEDINGS

### A. Facts

In early 2011 the State of Alaska, Department of Law, issued a Request for Proposals (RFP) for legal counsel to assist the Alaska Energy Authority in obtaining a federal license for construction and operation of a hydroelectric project. The RFP required that, to receive consideration, a proposal must be received at the Department of Law in Juneau by 3:00 p.m. on June 17, 2011. The RFP warned: "It is your

responsibility to ensure that the proposal arrives at the address indicated above before the deadline for receipt. Proposals received after 3:00 pm, on June 17, 2011, will be rejected and returned to the sender." The RFP reserved the State's right to "[r]eject any or all proposals received and to waive deviations from the terms of the RFP if the State determines the deviations are not material." The RFP also required that "all offerors hold a valid Alaska business license and any necessary applicable professional licenses required by Alaska Statute." The Department of Law notified prospective offerors on June 14 that the deadline for receipt of proposals had been changed to 3:00 p.m. on June 29.

Van Ness Feldman and six other law firms delivered proposals before the June 29 deadline. Davis Wright Tremaine, in partnership with another law firm, prepared to mail its proposal on June 27, but discovered an error in the cover letter and recalled its office services messenger before the proposal actually was mailed. Davis Wright Tremaine delivered the corrected proposal to the U.S. Postal Service in San Francisco the next day — June 28 — for Express Mail delivery to the Department of Law in Juneau. The Postal Service guaranteed delivery by 3:00 p.m. on June 30, the day after submissions were due. After the package mistakenly was routed through Wenatchee, Washington, the Postal Service attempted delivery at the Department of Law on June 30, but found no one available to accept delivery. The Postal Service delivered the package to the Department of Law on July 1.

The Department of Law's procurement officer initially believed she had discretion to waive Davis Wright Tremaine's failure to deliver its proposal before the deadline. Because she believed Davis Wright Tremaine "tried in good faith to make [the] deadline and the delays caused by the [Postal Service] were out-of-[Davis Wright Tremaine's] control," the procurement officer forwarded Davis Wright Tremaine's proposal to the evaluation committee for consideration.

The reviewers determined that Davis Wright Tremaine's proposal was the "most advantageous" to the State, and on July 22 the Department of Law issued a Notice of Intent to award Davis Wright Tremaine the legal services contract. On August 5 Van Ness Feldman — which had the third-ranked proposal — asked the procurement officer to provide the scoring breakdown, comments from the reviewers, and the two top-scoring proposals. On August 16 Van Ness Feldman filed a protest of the Notice of Intent — 11 days after it received the requested documents and 25 days after the Notice of Intent's issuance.

Van Ness Feldman asserted three deficiencies in the Department of Law's evaluation and processing of proposals: (1) the weighting of categories in the scoring was inconsistent with the RFP's terms; (2) the reviewers inappropriately considered an evaluation factor not specified in the RFP; and (3) the procurement officer erred by accepting Davis Wright Tremaine's late-filed proposal in violation of 2 Alaska Administrative Code (AAC) 12.250.[1] Van Ness Feldman also stated that, although its protest was filed after the ten-day deadline for protests,[2] it should be considered under the "good cause" exception to the deadline.[3]

---

[1]  2 AAC 12.250 (2013) provides: "Unless otherwise provided in the request for proposals, a proposal, correction, modification, or withdrawal received after the date and time set for receipt of proposals is late, and may not be accepted unless the delay is due to an error of the contracting agency."

[2]  AS 36.30.565(a) provides, in relevant part: "A protest based upon alleged improprieties in an award of a contract or a proposed award of a contract must be filed within 10 days after a notice of intent to award the contract is issued by the procurement officer."

[3]  AS 36.30.565(b) provides: "If the protester shows good cause, the procurement officer of the contracting agency may consider a filed protest that is not timely."

The procurement officer determined Van Ness Feldman had shown good cause under AS 36.30.565(b) and responded to the merits of Van Ness Feldman's protest. The procurement officer, acting on the advice of the Department of Administration's Chief Procurement Officer, concluded that 2 AAC 12.250 prohibited consideration of Davis Wright Tremaine's late-filed proposal and that correction of the scoring errors Van Ness Feldman noted resulted in a determination that Van Ness Feldman's proposal was the most advantageous to the State. The Department of Law issued a second Notice of Intent, declaring Davis Wright Tremaine's proposal nonresponsive for lateness and awarding Van Ness Feldman the legal services contract.

Davis Wright Tremaine timely protested the Notice of Intent awarding Van Ness Feldman the contract, arguing that Van Ness Feldman had failed to show good cause for the late-filed protest and that Van Ness Feldman was not a qualified offeror because Van Ness Feldman did not have a certificate of authority to transact business in Alaska. Davis Wright Tremaine also asserted that the procurement officer should not have rescinded the acceptance of Davis Wright Tremaine's late proposal because (1) the Alaska Administrative Code provides discretion to accept late proposals and (2) the State should follow the federal government's practice of allowing its procurement officers to accept late proposals.

The procurement officer denied Davis Wright Tremaine's protest, explaining that the procurement code did not give her authority to accept late proposals. She also reiterated that Van Ness Feldman's protest was properly considered for good cause and deemed all other grounds of Davis Wright Tremaine's protest moot. The State awarded Van Ness Feldman the legal services contract.

**B. Proceedings**

Davis Wright Tremaine appealed the procurement officer's denial of its protest to the Commissioner of the Department of Administration.[4] The Commissioner referred the matter to the Office of Administrative Hearings.[5] A hearing officer reviewed briefs from the Department of Law, Davis Wright Tremaine, and Van Ness Feldman, and ultimately recommended that the Commissioner reject the appeal and confirm the contract award to Van Ness Feldman.

The hearing officer rejected Davis Wright Tremaine's argument that the procurement officer erred in considering Van Ness Feldman's late-filed protest, concluding that the procurement officer properly exercised her discretion in finding good cause to consider the protest. The hearing officer found that, although Van Ness Feldman did not show sufficient reason for the delay in filing, Van Ness Feldman raised serious and substantial claims that the procurement code had been violated — the assertions that proposals were not evaluated consistently with the RFP criteria and that a late proposal was wrongly accepted provided good cause to consider the late protest.

The hearing officer also rejected Davis Wright Tremaine's argument that the procurement code and RFP did not prohibit the procurement officer from accepting Davis Wright Tremaine's late proposal. The hearing officer interpreted 2 AAC 12.250 to mean that "absent an explicit provision in the RFP, a late proposal may not be accepted unless the delay is due to an error of the contracting agency." After finding that the RFP did not contain such an explicit provision, the hearing officer concluded that

---

[4] We refer to the Department of Administration as the "Department," and to the Commissioner of the Department of Administration as the "Commissioner."

[5] *See* AS 36.30.670; AS 44.64.030(a)(25).

"the procurement officer ought not to have accepted [Davis Wright Tremaine's] late proposal."

Finally, the hearing officer rejected the argument that Van Ness Feldman could not be awarded the contract because it lacked a certificate of authority. The hearing officer noted that the RFP did not require offerors to possess a certificate and that "the lack of a certificate does not prevent [Van Ness Feldman] from being legally qualified to enter into a contract."

The Department, through the Commissioner, adopted the hearing officer's decision and order.[6] Davis Wright Tremaine appealed the Department's decision to the superior court.[7]

The superior court held the Department acted reasonably when it interpreted the RFP and 2 AAC 12.250 to prohibit consideration of any late-filed proposal. It also held the Department's determination of good cause to accept Van Ness Feldman's late-filed protest was reasonable, applying the same three factors used by the hearing officer. Finally, it held the Department reasonably considered Van Ness Feldman's initial proposal to be responsive despite Van Ness Feldman's lack of a certificate of authority to conduct business in Alaska. Accordingly, the superior court affirmed the Department's final decision.

Davis Wright Tremaine appeals.

## III.   STANDARD OF REVIEW

"When the superior court is acting as an intermediate court of appeal in an administrative matter, we independently review the merits of the agency or

---

[6]    Because the Commissioner adopted the hearing officer's decision, the rationale and interpretations contained in the decision are attributed to the Department through the Commissioner. *See* AS 36.30.675, .680.

[7]    *See* AS 36.30.685(a).

administrative board's decision."[8]  We apply different standards of review to agency decisions depending on the subject of review.

We apply the reasonable basis standard to questions of law involving "agency expertise or the determination of fundamental policies within the scope of the agency's statutory functions."[9]  When applying the reasonable basis test, we "seek to determine whether the agency's decision is supported by the facts and has a reasonable basis in law, even if we may not agree with the agency's ultimate determination."[10]  We apply the substitution of judgment standard to questions of law where no agency expertise is involved.[11]  Under the substitution of judgment standard, we may "substitute [our] own judgment for that of the agency even if the agency's decision had a reasonable basis in law."[12]

---

**8**      *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 267 P.3d 624, 630 (Alaska 2011) (citing *Hester v. State, Pub. Emps.' Ret. Bd.*, 817 P.2d 472, 474 (Alaska 1991)).

**9**      *Marathon Oil Co. v. State, Dep't of Natural Res.*, 254 P.3d 1078, 1082 (Alaska 2011) (citing *Matanuska-Susitna Borough v. Hammond*, 726 P.2d 166, 175 (Alaska 1986)); *see also May v. State, Commercial Fisheries Entry Comm'n*, 175 P.3d 1211, 1215 (Alaska 2007) (citing *Handley v. State, Dep't of Revenue*, 838 P.2d 1231, 1233 (Alaska 1992)).

**10**     *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987) (citing *Kelly v. Zamarello*, 486 P.2d 906, 918 (Alaska 1971)).

**11**     *Marathon Oil*, 254 P.3d at 1082 (quoting *Hammond*, 726 P.2d at 175); *May*, 175 P.3d at 1215 (citing *Handley*, 838 P.2d at 1233)).

**12**     *Tesoro Alaska*, 746 P.2d at 903 (citing *Earth Res. v. State, Dep't of Revenue*, 665 P.2d 960, 965 (Alaska 1983)).

We apply the "reasonable and not arbitrary" test to review the validity of administrative regulations.[13] We review an agency's interpretation and application of its own regulations using the reasonable basis standard of review.[14] "We will defer to the agency unless its 'interpretation is plainly erroneous and inconsistent with the regulation.' "[15] "We give more deference to agency interpretations that are 'longstanding and continuous.' "[16]

We also "will evaluate an agency's interpretation of regulations for consistency with the statute on which it is based."[17] This is a question of law to which we apply the appropriate standard of review based on the level of agency expertise involved. "Even under the independent judgment standard we '[give] some weight to what the agency has done, especially where the agency interpretation is longstanding.' "[18] When interpreting statutes and regulations, seemingly conflicting

---

[13]    *May*, 175 P.3d at 1215 (citing *Handley*, 838 P.2d at 1233).

[14]    *Kuzmin v. State, Commercial Fisheries Entry Comm'n*, 223 P.3d 86, 89 (Alaska 2009) (citing *Copeland v. State, Commercial Fisheries Entry Comm'n*, 167 P.3d 682, 683 (Alaska 2007)).

[15]    *Id.* (quoting *Copeland*, 167 P.3d at 683).

[16]    *Marathon Oil*, 254 P.3d at 1082 (quoting *Premera Blue Cross v. State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1119 (Alaska 2007)).

[17]    *Forquer v. State, Commercial Fisheries Entry Comm'n*, 677 P.2d 1236, 1241 (Alaska 1984) (citing *State, Commercial Fisheries Entry Comm'n v. Templeton*, 598 P.2d 77, 81 (Alaska 1979)).

[18]    *Palmer v. Municipality of Anchorage, Police & Fire Ret. Bd.*, 65 P.3d 832, 837 n.7 (Alaska 2003) (alteration in original) (quoting *Usibelli Coal Mine, Inc. v. State, Dep't of Natural Res.*, 921 P.2d 1134, 1142-43 (Alaska 1996)).

provisions must be harmonized unless such an interpretation would be at odds with statutory purpose.[19]

## IV.  DISCUSSION

### A.  The Department's Decision To Accept Van Ness Feldman's Late-Filed Protest For "Good Cause" Was Reasonable.

Alaska Statute 36.30.565(a) requires a protest based on alleged improprieties in a contract award to be filed within ten days after the notice of intent to award the contract is issued.  The statute allows consideration of a late-filed protest "[i]f the protestor shows good cause."[20]  "Good cause" in this context is not defined by statute or regulation.

Davis Wright Tremaine argues that the Department erred in considering Van Ness Feldman's protest because it was filed after the statutory deadline for protests and Van Ness Feldman failed to show "good cause."  The implication of this argument is that the procurement officer could not have rescinded the contract award to Davis Wright Tremaine absent Van Ness Feldman's protest.  Although we are skeptical of the proposition that a procurement officer cannot sua sponte rescind a contract award after discovering a material error in the procurement process, we do not need to address it because the procurement officer's determination that there was good cause to accept Van Ness Feldman's late-filed protest is reasonable.

The parties do not disagree that the protest was filed after the statutory deadline.  They instead dispute whether the Department erred in concluding Van Ness Feldman demonstrated good cause. The Department relied on factors established in prior administrative adjudications, considering the timing of the protest, the nature of the

---

[19]     *Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 516-17 (Alaska 1998).

[20]     AS 36.30.565(b).

objections raised, and the strength of the evidence presented.[21] Although the Department found that Van Ness Feldman did not show "sufficient reason for filing its protest late," it found that the claims raised in the protest were "serious and substantial" and the proffered evidence "undisputed" for at least two of the issues, including Davis Wright Tremaine's late proposal submission. The Department therefore concluded that there was good cause to consider Van Ness Feldman's protest despite its untimeliness.[22]

We review the Department's application of its "good cause" factors to the facts for reasonableness.[23] An assertion that a proposal was unlawfully accepted after the deadline raises a serious concern about the procurement process. And the evidence

[21]    See Payroll City v. Dep't of Envtl. Conservation, OAH No. 05-0583-PRO, at 5 (Jan. 30, 2006); see also Scientific Fishery Sys., Inc., Dep't of Admin. No. 98-08 (July 26, 1999) ("[T]he term 'good cause' in AS 36.30.565(b) includes not only 'good cause' for a delay in filing the protest, but also 'good cause' for considering the merits of the protest, even though it is untimely.").

[22]    Davis Wright Tremaine contends on appeal that use of the merit-based factors — the nature of the objections and the strength of the evidence — "extends the 'good cause' standard beyond its statutory language and should be rejected." Davis Wright Tremaine waived this argument by accepting the propriety of the merit-based factors' use in its arguments at the administrative and superior court levels. See Trs. for Alaska v. State, Dep't of Natural Res., 865 P.2d 745, 748 (Alaska 1993) ("[A] party must raise an issue during the administrative proceedings to preserve the issue for appeal."); Zeman v. Lufthansa German Airlines, 699 P.2d 1274, 1280 (Alaska 1985) ("As a general rule, a party may not present new issues or advance new theories [on appeal] to secure a reversal of a lower court decision." (citing O'Neill Investigations, Inc. v. Ill. Emp'rs Ins., 636 P.2d 1170, 1175 n.7 (Alaska 1981))).

We nonetheless note that AS 36.30.565(b) does not restrict the definition of "good cause," and it is not readily apparent that it is unreasonable for the Department to interpret "good cause" to encompass the merits of a protest to promote a policy of correcting serious errors in the procurement process.

[23]    See Kelly v. Zamarello, 486 P.2d 906, 917 (Alaska 1971).

that Davis Wright Tremaine's proposal was filed late is uncontested.  We thus hold that the Department's conclusion that there was good cause to consider Van Ness Feldman's late-filed protest was reasonable.

B.     **The Department's Interpretation That It Was Not Permitted To Accept Davis Wright Tremaine's Late-Filed Proposal Is Reasonable And Not Inconsistent With Statute.**

The Department relied on 2 AAC 12.250 in determining that Davis Wright Tremaine's proposal should have been rejected as untimely.  The Department interpreted the regulation's "unless otherwise provided" phrase to mean that no exception to the bar on late proposals is available unless a proposal request contains an explicit provision "stating under what conditions a late proposal would be accepted."  And the Department determined the RFP did not contain a sufficiently specific waiver to overcome the regulation's general prohibition on acceptance of late proposals.  Evaluating whether the Department's determination is lawful involves four inquiries: (1) whether 2 AAC 12.250 is valid; (2) whether the Department's interpretation of that regulation is reasonable; (3) whether the Department's interpretation of that regulation is consistent with statute; and (4) whether the Department's determination that the RFP lacked the necessary waiver is reasonable.  Davis Wright Tremaine does not contest that 2 AAC 12.250 is consistent with statute and is reasonable and not arbitrary, and therefore is valid.  It instead argues that the Department's strict interpretation of 2 AAC 12.250 is not reasonable and is inconsistent with statute because the regulation must be interpreted to give effect to a "common law materiality standard" the procurement code preserved for late-filed proposals.[24]  Davis Wright Tremaine also contends that it is unreasonable for

---

[24]     Under the common law materiality standard, "a variance from the requirements of an RFP will render a proposal nonresponsive only if that variance is material." *Laidlaw Transit, Inc. v. Anchorage Sch. Dist.*, 118 P.3d 1018, 1032 (Alaska (continued...)

the Department to conclude that the RFP's general waiver provision does not satisfy 2 AAC 12.250's "unless otherwise provided" clause.

Assuming a regulation is valid, we review whether an agency's interpretation of its regulation is " 'plainly erroneous and inconsistent with the regulation' " — i.e., whether it has a reasonable basis.[25] Davis Wright Tremaine does not argue that the Department's interpretation is plainly erroneous or inconsistent with the regulation itself, only that Davis Wright Tremaine's interpretation is better. Davis Wright Tremaine essentially asks us to apply a substitution of judgment standard to review whether the Department's interpretation is consistent with the regulation. But it is well established that an agency's interpretation of its own regulations is reviewed under the reasonable basis standard; this standard "recognizes that the agency is best able to discern its intent in promulgating the regulation at issue."[26] And the Department's interpretation of 2 AAC 12.250 is a reasonable one. Requiring an RFP to specifically provide an exception to the lateness rule is not inconsistent with 2 AAC 12.250's provision that an RFP must "otherwise provide" an exception for the Department to accept late-filed proposals. Moreover, requiring a specific exception promotes a policy

---

[24]     (...continued)
2005). "A variance is material if it gives the bidder a substantial advantage over other bidders and thereby restricts or stifles competition." *Chris Berg, Inc. v. State, Dep't of Transp. & Pub. Facilities*, 680 P.2d 93, 94 (Alaska 1984).

[25]     *Kuzmin v. State, Commercial Fisheries Entry Comm'n*, 223 P.3d 86, 89 (Alaska 2009) (quoting *Copeland v. State, Commercial Fisheries Entry Comm'n*, 167 P.3d 682, 683 (Alaska 2007)).

[26]     *Rose v. Commercial Fisheries Entry Comm'n*, 647 P.2d 154, 161 (Alaska 1982) (citing 2 KENNETH CULP DAVIS, ADMINISTRATIVE LAW TREATISE § 7.22, at 105-08 (2d ed. 1979)); *see also May v. State, Commercial Fisheries Entry Comm'n*, 175 P.3d 1211, 1215-16 (Alaska 2007); *Lauth v. State, Dep't of Health & Soc. Servs., Div. of Pub. Assistance*, 12 P.3d 181, 184 (Alaska 2000).

of giving offerors, as well as procurement officers, clear guidance as to when and under what circumstances a lateness waiver is available.[27]  The Department's interpretation is longstanding[28] and is entitled to particular deference.[29]  Therefore, the Department's interpretation that 2 AAC 12.250 bars acceptance of late proposals absent a specific exception in the RFP is reasonable.

We also review whether the agency's interpretation is inconsistent with or contrary to the statute on which the regulation is based.[30]  An agency's interpretation is

---

[27]    The Department contends that its interpretation is necessary to protect the integrity of the process and treat all offerors equally.  *See Geo-Seis Helicopters, Inc. v. United States*, 77 Fed. Cl. 633, 646 (2007) (recognizing that the federal strict lateness rule " 'alleviates confusion, ensures equal treatment of all offerors, and prevents an offeror from obtaining a competitive advantage that may accrue where an offeror is permitted to submit a proposal later than the deadline set for all competitors' " (quoting *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 173 (2005))).  And the Department's Chief Procurement Officer testified:

> Creating a new rule that would vest procurement officers with the discretion to determine on a case-by-case basis whether to accept a late proposal would impose significant administrative burdens on our division and other procurement units and introduce uncertainty into what has been a well-understood tenet of state procurement law.

[28]    *See, e.g., Kalen & Assocs. v. Dep't of Natural Res.*, OAH No. 08-0123-PRO (May 13, 2008) (affirming agency's rejection of late proposal even though offeror was not at fault).  The Department's Chief Procurement Officer asserted that in his 28 years in state procurement, neither he nor his staff has ever allowed a late proposal or bid to be considered for an award.

[29]    *Marathon Oil Co. v. State, Dep't of Natural Res.*, 254 P.3d 1078, 1082 (Alaska 2011) (quoting *Premera Blue Cross v. State, Dep't of Commerce, Cmty. & Econ Dev., Div. of Ins.*, 171 P.3d 1110, 1119 (Alaska 2007)).

[30]    *See Trs. for Alaska v. Gorsuch*, 835 P.2d 1239, 1245 (Alaska 1992) (continued...)

consistent with statute unless the statute's text and purpose prohibit such an interpretation.[31] Davis Wright Tremaine contends that the procurement code — AS 36.30.005-.995 — preserves the common law materiality standard for proposals. It argues that interpreting 2 AAC 12.250 to prohibit accepting late proposals absent an express exception in the RFP nullifies the common law materiality exception and is thus inconsistent with the procurement code.

Davis Wright Tremaine can prevail on its argument only if the procurement code requires the Department to apply the common law materiality standard to late-filed proposals. This is a question of law not involving agency expertise, to which we apply our own judgment.[32]

---

[30]     (...continued)
(explaining that because an agency's interpretation of its own regulations was "neither plainly erroneous nor inconsistent with the regulations[,] it should be given effect unless it is contrary to [the applicable statute]"); *Forquer v. State, Commercial Fisheries Entry Comm'n*, 677 P.2d 1236, 1241 (Alaska 1984) (noting "this court will evaluate an agency's interpretation of regulations for consistency with the statute on which [the regulation] is based" (citing *State, Commercial Fisheries Entry Comm'n v. Templeton*, 598 P.2d 77, 81 (Alaska 1979))).

[31]     *Compare Natural Res. Def. Council, Inc. v. U.S. Envtl. Prot. Agency*, 25 F.3d 1063, 1070 (D.C. Cir. 1994) (holding agency's interpretation of its regulation not inconsistent with statute when nothing in statute's language prohibited such interpretation or required a different interpretation), *with Cont'l Training Servs., Inc. v. Cavazos*, 893 F.2d 877, 892 (7th Cir. 1990) (holding regulation could not be interpreted to exclude hearing on the record that was required by statute's text), *and United Transp. Union v. Dole*, 797 F.2d 823, 829 (10th Cir. 1986) (holding regulation could not be interpreted to permit specific construction project where statute's text prohibited "any" construction).

[32]     *See, e.g.*, *Harrod v. State, Dep't of Revenue*, 255 P.3d 991, 995 (Alaska 2011) (citing *Temple v. Denali Princess Lodge*, 21 P.3d 813, 815 (Alaska 2001)). Even under the independent judgment standard of review, we recognize "that an agency's

(continued...)

The procurement code's text does not expressly adopt the common law materiality standard.[33] And the procurement code directs the Department to adopt regulations pertaining to "the opening or rejection of bids and offers, *and waiver of informalities* in bids and offers," without any reference to the common law materiality standard.[34]

Davis Wright Tremaine asserts, however, that the specific structure of AS 36.30.100 through AS 36.30.290 evidences a legislative intent to preserve the common law materiality standard for the proposal submission process. These statutes provide different frameworks for procurement by bids and by proposals.[35] The statute governing bids expressly prohibits acceptance of bids received after the due date and time unless the delay was due to an error of the contracting agency.[36] The statute

---

[32]    (...continued)
interpretation of a law within its area of jurisdiction can help resolve lingering ambiguity, particularly when the agency's interpretation is longstanding." *Bartley v. State, Dep't of Admin., Teacher's Ret. Bd.*, 110 P.3d 1254, 1261 (Alaska 2005) (citing *Union Oil Co. v. State, Dep't of Revenue*, 560 P.2d 21, 23, 25 (Alaska 1977)). In such cases, we "look for 'weighty reasons' before substituting our judgment for the agency's." *Id.* (quoting *Kelly v. Zamarello*, 486 P.2d 906, 910-11 (Alaska 1971)).

[33]    The statute's general savings clause is insufficient to impose specific extra-statutory common law restrictions on the discretion the statute confers on the Department. *See* AS 36.30.860 ("Unless displaced by the particular provisions of this chapter, the principles of law and equity . . . shall supplement the provisions of this chapter.").

[34]    AS 36.30.040(b)(5) (emphasis added).

[35]    *Compare* AS 36.30.100-.190 (competitive sealed bids), *with* AS 36.30.200-.250 (competitive sealed proposals).

[36]    AS 36.30.160(a).

governing proposals contains no provision relating to timeliness of submission, other than that an RFP "must contain the date, time, and place for delivering proposals."[37]

We do not agree that this structure demonstrates legislative intent to require the Department to adopt and apply the common law materiality standard for late proposals. Nor has Davis Wright Tremaine cited any legislative history in support of this assertion. Although a provision's omission in a statute typically is interpreted to be intentional when the provision is present in a similar statute,[38] it does not follow that the statute's rule for bid submissions necessarily prohibits the Department from adopting a similar rule for proposal submissions. The difference instead can be read to mean that the Department is not *required* to adopt a policy rejecting all late proposals, as it must do for bids. But nothing in the statute's structure requires the Department to adopt and apply the common law materiality standard to proposals, and nothing in the statute prohibits the Department from interpreting 2 AAC 12.250 to bar acceptance of late proposals absent a specific exception in the RFP. Had the legislature intended to require the Department to apply the common law materiality standard to late proposals, it could have done so explicitly, but it did not.[39] The Department's interpretation of 2 AAC 12.250 is not inconsistent with the procurement statute.

The final inquiry relates to the reasonableness of the Department's determination that the RFP did not contain the specific waiver necessary to overcome the

---

[37]     AS 36.30.210(a).

[38]     *See* 2B NORMAN J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND ON STATUTES AND STATUTORY CONSTRUCTION § 51:2, at 213-14 (7th ed. 2007).

[39]     As the U.S. Supreme Court has stated, "Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions — it does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

general prohibition on acceptance of late proposals in 2 AAC 12.250. The original RFP stated: "Proposals received after 3:00 pm on June 17, 2011, will be rejected and returned to the sender."[40] The RFP also contained a general waiver provision: "The State reserves the right to . . . waive deviations from the terms of the RFP if the State determines the deviations are not material." The Department determined "[t]his general clause allowing a waiver of non-material deviations from the RFP does not allow waiver of a deviation from a regulation" — that is, the general waiver clause was not sufficiently specific to "demonstrate the purchasing agency's intent" to render the prohibition in 2 AAC 12.250 inapplicable.

The Department's determination that the RFP did not contain a specific exception is a question of law involving the Department's expertise and is thus reviewed under the reasonable basis standard.[41] The RFP contained no provision expressly indicating that 2 AAC 12.250's prohibition on accepting late-filed proposals did not apply. And the clause cautioning that all late proposals would be rejected reaffirmed the regulation's prohibition. We therefore hold that the Department's conclusion that the RFP did not contain an explicit provision permitting acceptance of late proposals is reasonable.[42]

_____

[40]    The RFP later was amended to change the deadline date to June 29.

[41]    *See Burke v. Houston NANA, L.L.C.*, 222 P.3d 851, 858 (Alaska 2010); *May v. State, Commercial Fisheries Entry Comm'n*, 175 P.3d 1211, 1215 (Alaska 2007).

[42]    Davis Wright Tremaine's contention that it is unreasonable to conclude the RFP's general waiver clause is insufficient to overcome 2 AAC 12.250's prohibition on acceptance of late proposals is based on the assumption that the Department cannot lawfully interpret the regulation's "unless otherwise provided" clause as requiring an RFP exception to be specific. But the Department's interpretation is lawful, so Davis Wright Tremaine's argument fails. Davis Wright Tremaine does not argue that it is

(continued...)

**C.** **The Department's Decision That Van Ness Feldman's Lack Of A Certificate Of Authority Did Not Render Van Ness Feldman's Proposal Nonresponsive Is Reasonable.**

Davis Wright Tremaine argues that the Department erred in concluding that Van Ness Feldman's failure to obtain a certificate of authority before submitting its proposal did not render Van Ness Feldman's proposal nonresponsive.[43] We review the Department's responsiveness determination under the reasonable basis standard.[44]

Responsiveness requires that a proposal respond to the terms and conditions set forth in the RFP.[45] The RFP did not expressly require offerors to possess a certificate of authority. Davis Wright Tremaine argues that such a requirement is implied in all RFPs because "general principles of law . . . are applicable to *all* procurements."[46] But compliance with a statutory certification requirement is not necessary for a proposal to be responsive when the request for proposals does not require such compliance.[47] In addition, the Department provides good reason for not requiring that offerors hold a certificate of authority prior to proposal submission: imposing such a requirement

---

[42]    (...continued)
otherwise unreasonable for the Department to conclude the RFP lacked a specific waiver.

[43]    AS 10.06.705 provides: "A foreign corporation may not transact business in this state until it has been issued a certificate of authority . . . ."

[44]    *Laidlaw Transit, Inc. v. Anchorage Sch. Dist.*, 118 P.3d 1018, 1032 (Alaska 2005).

[45]    *See Gunderson v. Univ. of Alaska, Fairbanks*, 922 P.2d 229, 235 (Alaska 1996).

[46]    *See* AS 36.30.860 ("[T]he principles of law and equity, including . . . law relative to capacity to contract . . . shall supplement the provisions of this chapter.").

[47]    *See State, Dep't of Educ. v. Nickerson*, 711 P.2d 1165, 1167-68 (Alaska 1985).

"could limit competition as some corporations may not wish to complete the required [certificate] application if they are not awarded the contract." Accordingly, we hold the Department reasonably concluded a certificate of authority was not required for Van Ness Feldman's proposal to be responsive.[48]

## V. CONCLUSION

We AFFIRM the superior court's decision upholding the Department of Administration's denial of Davis Wright Tremaine's protest and the award of the legal services contract to Van Ness Feldman.

---

[48] Davis Wright Tremaine also argues that Van Ness Feldman does not qualify for the interstate commerce exception to the certificate requirement. *See* AS 10.06.718(9). The superior court held, without explanation, that Van Ness Feldman "is a foreign corporation involved in interstate commerce." Because we have determined that the Department reasonably concluded that Van Ness Feldman was not required to hold a certificate of authority for its proposal to be responsive, we do not need to reach the issue whether its proposal submission constituted "transacting business in interstate commerce" under AS 10.06.718(9).