*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| NORTH SLOPE BOROUGH and NORTH SLOPE BOROUGH SCHOOL DISTRICT, | ) ) ) Supreme Court No. S-17546 |
| | ) |
| | ) Superior Court No. 3AN-16-09264 CI |
| Appellants, | ) |
| | ) O P I N I O N |
| v. | ) |
| | ) No. 7511 – April 2, 2021 |
| STATE OF ALASKA, DEPARTMENT OF EDUCATION & EARLY DEVELOPMENT, | ) ) ) ) |
| Appellee. | ) ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Kevin M. Saxby, Judge.

Appearances: Molly Brown and Jessica Dillon, Dillon & Findley, P.C., Anchorage, and Allen Clendaniel and Lea Filippi, Sedor, Wendlandt, Evans & Filippi, LLC, Anchorage, for Appellants. Janell M. Hafner, Chief Assistant Attorney General, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices. [Borghesan, Justice, not participating.]

CARNEY, Justice.

# I.    INTRODUCTION

Alaska's school debt reimbursement program allows municipalities to be reimbursed by the Department of Education and Early Development for bond payments related to school construction and renovation.  To qualify for reimbursement, eligible bonds must be repaid in approximately equal payments over a period of at least ten years.

For years a municipality issued, and sought reimbursement for, construction bonds that did not satisfy the equal payments requirement and the Department reimbursed the municipality.  But when the municipality, after a several year absence, sought reimbursement for additional bonds that did not comply with the equal payments requirement, the Department denied the reimbursement.

The municipality sought administrative review, and the Department's commissioner upheld the decision.  The municipality then appealed to the superior court and requested a trial de novo.  The superior court denied the request for a trial de novo and affirmed the Department's decision.  The municipality now appeals both the Department's and superior court's decisions.  Because neither the Department nor the superior court erred, we affirm their decisions.

# II.    FACTS AND PROCEEDINGS

## A.    Alaska's School Debt Reimbursement Program

The Department of Education and Early Development oversees primary and secondary public education in Alaska.[1]  One of the Department's responsibilities is to distribute "approximately $1.5 billion annually in general fund support to over 500

---

[1]    *See* AS 14.07.020(a)(1).

public schools in 270 communities" to help fund education.[2]   The Department accomplishes this responsibility in part through a school debt reimbursement program.[3]

The school debt reimbursement program allows municipalities to seek reimbursement for payments made on approved school construction bonds.[4]   According to the Department, municipalities typically engage in a multi-step process to receive reimbursement.  First, the municipality submits a construction project application, which the Department reviews for compliance with certain statutory and regulatory requirements.[5]   The municipality then seeks voter approval to issue municipal bonds to help fund the project and, after making a payment on the bond, the municipality submits a request to the Department for allocation in the annual budget.[6]

Specific statutory criteria govern the Department's allocation of debt reimbursement funds.[7]   For example, AS 14.11.100(j)(1) requires municipalities to include information about total anticipated interest payments and estimated annual operation and maintenance costs on the local bond measure ballot.  Another section of

---

[2]    *See* AS 14.07.020(a)(11), (13); *see generally* AS 14.07.020(a).

[3]    AS 14.11.100(a)-(b).

[4]    AS 14.11.100(a)(1)-(19).  Municipal bonds "are debt securities issued by states . . . to fund day-to-day obligations and to finance capital projects such as building schools."   Municipal Bonds, Investor.gov, https://www.investor.gov/introduction-investing/investing-basics/investment-products/bonds-or-fixed-income-products-0. Purchasing a municipal bond is essentially "lending money to the bond issuer in exchange for a promise of regular payments . . . and the return of the original investment, or 'principal.' "  *Id.*

[5]    *See, e.g.*, AS 14.11.100(j)(4)-(5); 4 Alaska Administrative Code (AAC) 31.060-.062 (2020).

[6]    AS 14.11.102; 4 AAC 31.060(e); 4 AAC 31.062.

[7]    *See generally* AS 14.11.100.

the statute — the one at issue here — requires that applicable bonds "be repaid in approximately equal annual principal payments or approximately equal debt service payments over a period of at least 10 years."[8]

Allocation requests must be submitted to the Department by October 15 of the fiscal year preceding the fiscal year in which reimbursement is sought.[9] After receiving the requests, the Department submits a statewide appropriation request through the governor's annual budget. In the event the legislature does not appropriate sufficient funds to cover all allocation requests, the Department must distribute funds pro rata to all eligible municipalities.[10]

Before reimbursing a municipality, the Department contacts the municipality's trust agent — who receives money from the municipality and makes payments to bond holders — to confirm receipt of payment from the municipality. It also verifies that the reimbursement request amount matches the trust agent's signed payment confirmation. If there are available funds, the Department then reimburses the municipality for the statutorily approved percentage of funds or its pro rata share.[11]

## B. Facts

The dispute in this case concerns five bonds issued by the North Slope Borough between 2006 and 2013. Despite the statutory requirement for approximately

---

[8]    AS 11.14.100(j)(3). According to the Department, most municipalities submit their initial allocation request before they issue bonds. In these cases, the Department accepts an estimated debt service schedule. Once a bond is sold, the Department requires an actual debt service schedule prior to reimbursement.

[9]    4 AAC 31.060(e).

[10]    AS 14.11.100(c).

[11]    *See* AS 14.11.100(a)(1)-(19); AS 14.11.100(c).

equal debt service payments over a period of at least ten years,[12] for a number of years, the Borough had issued bonds with unequal service payments and the Department had partially reimbursed the Borough for them. The Borough asserted that the noncompliant payment terms for these bonds allowed it to achieve "short term budget certainty" and ensure it had sufficient revenue to make bond payments. The Department employee responsible for reviewing the Borough's allocation requests later supplied an affidavit stating he was unaware of the statutory requirements for eligible bonds when he recommended reimbursement of the noncompliant bonds.

The bonds in this case, 2006A, 2008A, and 2009B (the earlier bonds) and 2012A and 2013A (the later bonds), were issued and approved by Borough voters in 2006 through 2013. When the Borough submitted allocation requests for them, the Department determined that none of the bonds complied with the requirements of AS 14.11.100(j)(3).

Although the Department states that municipalities usually request prior approval before issuing bonds, the Borough issued and began making payments on the earlier bonds before submitting any requests for project approval or debt reimbursement. The Borough requested approval for projects funded by these earlier bonds after construction was substantially completed. In July 2011 the Borough requested approval for the Nuiqsut Trapper School Renovation, a project that had been substantially completed eight months earlier. In March 2012 the Borough requested approval for the Tikigaq School Gym and Locker Room Renovation project in Point Hope, which had been completed in January 2008. The Department approved both projects in June 2012

---

[12] AS 14.11.100(j)(3).

and agreed the projects were eligible for reimbursement at a 70% rate.[13] The 2006A, 2008A, 2009A, and 2009B bonds were identified as funding sources for the projects.

In October 2012 the Borough requested allocation for its anticipated debt service payments in fiscal year 2014. The request included anticipated payments on three of the bonds — 2006A, 2008A, and 2012A. In June 2013 the Borough requested approval for a second project at the Point Hope school, the Tikigaq School Major Renovation and New Gymnasium project; it later identified the 2012A and 2013A bonds as funding sources for this project. And in September the Borough requested allocation for its anticipated debt payments in fiscal year 2015 on the 2006A, 2008A, 2012A, and 2013A bonds.

In August 2014 the Department's Director of School Finance and Facilities denied the Borough's June 2013 project application for the Tikigaq School Major Renovation and New Gymnasium project. The rejection letter stated that the bonds identified to fund the project did not meet the statutory requirements of approximately equal debt service payments over a period of at least ten years. The Borough asked the Department to reconsider its decision. In the alternative, the Borough asked for a written, final determination so that it could begin the administrative appeals process. No response to the Borough's September 2014 letter exists in the record.

In November the Borough formally requested an explanation why it had not received reimbursement for payments on the five bonds. The Department responded in January 2015 that the bonds were not eligible for reimbursement because the debt service schedules did not comply with AS 14.11.100(j)(3).

---

[13]    *See* AS 14.11.100(a)(16).

### C. Proceedings

#### 1. Agency proceedings

In February 2015 the Borough appealed to the Commissioner.[14] The Borough made three central claims: that the Department's denial constituted an unlawful change in policy or practice prohibited by equitable estoppel; that the denial of the Borough's June 2013 project application based on the unequal payment structure of the later bonds was a violation of "the statutory process outlined in AS 14.11.100"; and that it was unlawful to deny reimbursement of payments on the earlier bonds after approving the construction projects associated with those bonds. The Commissioner appointed a designee to review the Department's decision.[15]

In March the designee issued her determination affirming the Department's decision that the bonds were "not amortized in approximately equal payments over ten years as required by AS 14.11.100(j)(3)." As a result, the designee also affirmed the Department's denial of the Borough's June 2013 project application because the bonds it proposed to fund the project did not meet the statutory requirements.

The Borough requested a formal hearing.[16] After early motion practice the hearing officer issued an order in June 2015 stating that "[t]he parties appear to agree the core issue is one of statutory construction that may be subject to summary adjudication" and asked them to brief the standard of review he should use.[17]

---

[14]    *See* 4 Alaska Administrative Code (AAC) 40.020 (2020).

[15]    *See* 4 AAC 40.030.

[16]    *See* 4 AAC 40.040.

[17]    4 AAC 40.040(e)(9) defines the standard of review to be used in formal hearings and states:

(continued...)

The hearing officer issued a recommended decision[18] in July 2015, which the Commissioner remanded for further clarification. The hearing officer issued a final recommended decision in August, and the Commissioner adopted it.

After reviewing the parties' briefs and the language of the regulation, the hearing officer concluded that under 4 AAC 40.040(e)(9), he was required to uphold the Department's initial denial unless the decision maker did not have a reasonable basis for her decision based on substantial evidence available to her at the time. He also concluded that he was required to uphold the Department's review of the initial decision unless the Commissioner's designee abused her discretion based on substantial evidence available to her at the time she conducted the review.

---

[17] (...continued)
[T]he hearing officer shall recommend that the commissioner uphold the initial decision maker or the commissioner's designee unless the hearing officer determines that

> (A) the initial decision maker did not have a reasonable basis for the decision, based upon substantial evidence that was available to the initial decision maker at the time of the decision; or

> (B) the commissioner's designee abused the designee's discretion in failing to grant the relief requested by the district or applicant, based upon substantial evidence that was available to the designee at the time of the decision.

The hearing officer asked the parties to brief specifically how this standard of review should apply to summary adjudication.

[18] The hearing officer submits a recommended decision to the commissioner, who reviews the decision and may adopt "all, part, or none" of the recommended decision, or may remand the decision with written instructions for further hearing or further deliberation. 4 AAC 40.040(f) and (g).

After reviewing the record, including the evidence the parties submitted with their summary adjudication motions, the hearing officer determined there was "a reasonable basis . . . to decide . . . the bonds were not eligible for debt reimbursement" based on substantial evidence available to the Department at the time it issued its initial decision. The hearing officer next reviewed the information the Commissioner's designee cited in support of her decision and concluded that the designee did not abuse her discretion in affirming the Department's initial decision or in rejecting the Borough's estoppel argument.

## 2. Superior court proceedings

The Borough appealed to the superior court and moved for a trial de novo.[19] In its motion the Borough asserted that the hearing officer had reviewed the Department's decisions under the wrong standard and adopted disputed material facts, which was inappropriate at the summary adjudication stage. The Borough claimed it was denied an opportunity to develop an adequate record as a consequence, thus warranting a trial de novo. The Department objected, arguing that the Borough had ample opportunity to develop the record as part of the administrative hearing process and that the record was adequate to allow appellate review.

The court denied the Borough's motion. It reasoned that the Department's administrative procedures did not deny the Borough due process, and that any error due to the hearing officer's choice of an improper standard of review was harmless.

After the motion for a trial de novo was denied, the parties turned to the Borough's administrative appeal. The Borough again argued that the hearing officer employed the wrong standard of review and incorrectly adopted disputed facts in the

---

[19]     Alaska Appellate Rule 609(b)(1) provides: "In an appeal from an administrative agency, the superior court may in its discretion grant a trial de novo in whole or in part."

Department's favor; that the Department wrongly interpreted AS 14.11.100(j)(3), which the Borough argued "does not prohibit a municipal entity from pooling projects into one bond with a separate school debt schedule or require separate bonding for schools"; that the earlier bonds substantially complied with statutory requirements, and that the Department should be estopped from denying reimbursement. The superior court rejected each of the Borough's arguments. The Borough now appeals the superior court's denial of a trial de novo and the Department's denial of the reimbursement requests.

## III. STANDARDS OF REVIEW

Because the Borough sought a trial de novo in lieu of proceeding with the administrative appeal, we first review the superior court's denial of its motion. "We review the superior court's denial of a trial de novo for abuse of discretion."[20] When a superior court acts as an intermediate court of appeals,[21] "we independently review the administrative decision."[22]

The deference we afford to agency decisions in our independent review varies based on the type of determination disputed on appeal.[23] For "questions of law involving 'agency expertise or the determination of fundamental policies within the scope of the agency's statutory functions,' " we evaluate "whether the agency's decision

---

[20] *Horner-Neufeld v. Univ. of Alaska Fairbanks*, 389 P.3d 6, 11 (Alaska 2017).

[21] *See* AS 22.10.020(d); AS 44.62.560(a); Alaska R. App. P. 602(a)(2).

[22] *Titus v. State, Dep't, of Admin., Div. of Motor Vehicles*, 305 P.3d 1271, 1276 (Alaska 2013) (quoting *Alaska Exch. Carriers Ass'n, Inc. v. Regulatory Comm'n of Alaska*, 202 P.3d 458, 460 (Alaska 2009)).

[23] *Davis Wright Tremaine LLP v. State, Dep't of Admin.*, 324 P.3d 293, 298-99 (Alaska 2014).

is supported by the facts and has a reasonable basis in law, even if we may not agree with the agency's ultimate determination."[24]   For questions of law involving no agency expertise, we substitute our "own judgment for that of the agency even if the agency's decision had a reasonable basis in law."[25]  "We review an agency's interpretation and application of its own regulations using the reasonable basis standard of review" and will defer to the agency's interpretation "unless its 'interpretation is plainly erroneous and inconsistent with the regulation.' "[26]

"We apply our independent judgment to determine whether an agency action is a regulation subject to the notice and public comment provisions of the [Administrative Procedure Act]."[27]

## IV.   DISCUSSION

### A.   The Superior Court Did Not Abuse Its Discretion By Denying The Borough's Request For A Trial De Novo.

Alaska Appellate Rule 609 grants the superior court discretion to hold a trial de novo in an appeal from an administrative agency.[28]  This procedure is "rarely warranted."[29]  De novo review is appropriate "where the agency record is inadequate;

---

[24]   *Nicolos v. N. Slope Borough*, 424 P.3d 318, 325 (Alaska 2018) (quoting *Davis Wright Tremaine*, 324 P.3d at 299).

[25]   *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 903 (Alaska 1987).

[26]   *Davis Wright Tremaine*, 324 P.3d at 299 (quoting *Kuzmin v. State, Commercial Fisheries Entry Comm'n*, 223 P.3d 86, 89 (Alaska 2009)).

[27]   *Alyeska Pipeline Serv. Co. v. State*, 288 P.3d 736, 741-42 (Alaska 2012).

[28]   Alaska R. App. P. 609(b)(1).

[29]   *S. Anchorage Concerned Coal., Inc. v. Municipality of Anchorage Bd. of* (continued...)

where the agency's procedures are inadequate or do not otherwise afford due process; or where the agency was biased or excluded important evidence in its decision-making process."[30]

The Borough argues that it is entitled to a trial de novo. It claims the record was inadequate due to the hearing officer's failure to hold a full hearing as permitted by 4 AAC 40.040, which would have allowed it to more fully develop witness testimony. The Borough further contends that Department procedures were inadequate because the Borough was "precluded . . . from contesting disputed material facts at a formal hearing." But the Borough *stipulated* to summary adjudication.[31]

The Borough was not required to agree to summary adjudication; it could have argued that there were disputed material facts, making summary adjudication inappropriate. But it did not. The Borough instead conceded there were no disputed material facts and argued for summary judgment in its favor. That it did not like the hearing officer's decision does not mean it was denied an adequate opportunity to be heard. And if there was evidence material to the Borough's position, the Borough had the opportunity to introduce it and should have done so. There was no dispute that the five bonds at issue did not comply with AS 14.11.100(j)(3) as the Department interpreted the statute. The record at the administrative hearing provided an adequate basis for the hearing officer's decision.

---

[29]    (...continued)
*Adjustment*, 172 P.3d 774, 778 (Alaska 2007).

[30]    *Id.*

[31]    *See* 4 AAC 40.040(e)(3)(F) (allowing party requesting formal hearing after designee's decision to request "summary adjudication").

In addition, although the Borough argues it was not given an opportunity to cross-examine and impeach witnesses, it has not made any factual claim that, if true, would have affected the Department's decision. It has not claimed that the Department excluded important evidence or was biased in its decision-making process. The Borough's claims are that the Department wrongly interpreted AS 14.11.100(j)(3); that the Department's interpretation violated the Administrative Procedure Act (APA);[32] that the earlier bonds substantially comply with the statute; and that equitable estoppel should require the Department to reimburse the Borough. These are not factual disputes; they are disputes about legal conclusions. The superior court did not abuse its discretion by denying the Borough's motion for a trial de novo.

## B.     The Hearing Officer Appropriately Applied The Deferential Standard Of Review To The Designee's Decision To Deny Reimbursement.

The hearing officer reviewed the Department's denial of the Borough's reimbursement under the standard prescribed by 4 AAC 40.040(e)(9). The language of the regulation makes clear that it requires deference to the Department's decision: "the hearing officer shall recommend that the commissioner uphold the initial decision maker or the commissioner's designee unless . . . the initial decision maker did not have a reasonable basis for the decision . . . [or] the commissioner's designee abused [its] discretion."[33] The Borough argues that this standard was inappropriate and that the hearing officer should have reviewed the Department's decision under Alaska Civil Rule 56. But the Borough fails to make a compelling argument that the regulation's standard was not appropriate and appears to misunderstand Rule 56. Because the hearing officer

---

[32]     AS 44.62.010-.950 (describing requirements for delegation of legislative authority to government departments and agencies).

[33]     4 AAC 40.040(e)(9).

correctly applied the reasonable basis test required by regulation to review the Department's decision deferentially, we find no error.

The Borough claims that because summary adjudication is mentioned only in 4 AAC 40.040(e)(3)(F), the standard of review defined in 4 AAC 40.040(e)(9) was not meant to apply to decisions on summary adjudication. Instead, the Borough asserts that Rule 56, which governs summary judgment in civil cases, should apply. In support, the Borough cites several decisions from the Office of Tax Appeals and our decision in *Smith v. State, Department of Revenue, Child Support Enforcement Division.*[34]

*Smith* does not support the Borough or even address the appropriate standard of review. There we held that a hearing officer could properly resolve Smith's appeal of his child support obligation by summary adjudication because there were no material facts in dispute.[35] We did not expressly address the standard of review that should apply.[36] We stated only that when no material facts were in dispute, summary adjudication afforded the litigant "a fair opportunity to contest legal issues."[37]

The legislature created the Office of Tax Appeals and gave it "original jurisdiction to hear formal appeals from informal conference decisions of the Department of Revenue."[38] The hearing officer in each tax appeal case the Borough cites decided matters as would a trial court in response to summary judgment motions: after

---

[34]     790 P.2d 1352 (Alaska 1990).

[35]     *Id.* at 1353.

[36]     *See id.*

[37]     *Id.*

[38]     AS 43.05.405.

concluding that no facts material to the outcome were in dispute, they made purely legal determinations.[39]

A closer look at Rule 56 reveals a fundamental misconception in the Borough's argument. Rule 56 does not set out a standard of review; it prescribes procedures for filing motions for summary judgment, evidence that may be submitted and relied on by the court when making a decision, how the court should resolve any factual disputes, and when summary judgment is appropriate.[40]

Nor do the cases from the Office of Tax Appeal support the Borough's argument. The statute governing administrative reviews before that agency expressly provides that the administrative law judge reviews all questions de novo.[41] As we have explained,

> [T]he legislature created [in the Office of Tax Appeals] the functional equivalent of a full trial court charged with the task of impartially resolving tax disputes. Accordingly, the Office of Tax Appeals, like any trial court, must review and determine facts de novo, and exercise its independent judgment in interpreting and applying the law to the facts.[42]

As a result, the Office of Tax Appeals functions like a trial court, making factual findings and drawing legal conclusions de novo. Rule 56 does not affect its role; the rule simply states that a tribunal may issue a summary decision only when undisputed facts "show

---

[39] *See In re No Name, Inc.*, OAH No. 04-0321-TAX at 5 (July 6, 2013); *In re VECO Corp.*, OAH No. 10-0137-TAX at 2 (Oct. 12, 2012); *In re City of Valdez's Objection*, OAH Nos. 06-0250-TAX, 06-0251-TAX at 3-5 (Apr. 25, 2011); *In re City of Valdez Notice of Escaped Prop.*, OAH No. 04-0322-TAX at 4 (Aug. 27, 2010).

[40] *See* Alaska R. Civ. P. 56(a), (b), (c), (e).

[41] AS 43.05.435.

[42] *State, Dep't of Revenue v. DynCorp & Subsidiaries*, 14 P.3d 981, 984 (Alaska 2000) (footnote omitted).

that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."[43]

The Department's regulations expressly prescribe a deferential standard of review.[44] The hearing officer must recommend that the Commissioner affirm the Department's initial decision if substantial evidence provides a reasonable basis for the decision.[45] Likewise, the hearing officer must recommend upholding the review by the Commissioner's designee if substantial evidence supports that there was no abuse of discretion.[46] Rather than resembling Rule 56's directions to a trial court considering summary judgment, this standard of review suggests that the hearing officer acts more like an appellate court deferentially reviewing previous decisions than a trial court.

While Rule 56 guides the procedural aspects of the hearing officer's decision, as it does for trial courts and the Office of Tax Appeals, it does not establish the standard of review. Summary adjudication before any of these tribunals would be inappropriate if material facts were disputed. Such a dispute could have precluded the legal conclusion that there was a reasonable basis for the initial decision or could have raised issues regarding whether the Commissioner's designee abused her discretion.

If the Borough had shown through affidavits or other evidence obtained through discovery that the Commissioner's designee relied on inappropriate factors in reviewing the initial decision, it might have created a material factual dispute sufficient to call into question whether the designee abused her discretion. But the absence of disputed material facts relevant to the central legal questions presented to the hearing

---

[43]     Alaska R. Civ. P. 56(c).

[44]     *See* 4 AAC 40.040(e)(9).

[45]     4 AAC 40.040(e)(9)(A).

[46]     4 AAC 40.040(e)(9)(B).

officer — whether the decision had a reasonable basis and whether the Commissioner's designee abused her discretion — meant that summary adjudication was appropriate.

The hearing officer conducted the appropriate analysis. He considered the evidence that was before the Department's initial decision maker at the time she made her decision and concluded that undisputed facts provided substantial evidence that there was a reasonable basis for the initial decision. The hearing officer then considered the evidence that the Commissioner's designee reviewed in affirming the initial decision and concluded that undisputed facts provided substantial evidence that the designee did not abuse her discretion.

**C.  There Is A Reasonable Basis For The Department's Conclusion That The Bonds Did Not Comply With The Statute.**

The parties dispute the standard under which we should review the Department's interpretation of AS 14.11.100(j)(3). The Borough argues that we should interpret the statute de novo. The Department counters that we should apply the more deferential reasonable basis standard.

**1.  The reasonable basis standard is appropriate.**

We review an agency's interpretation of a statute under the reasonable basis standard "when the interpretation at issue implicates agency expertise or the determination of fundamental policies within the scope of the agency's statutory functions."[47] The legislature has charged the Department with the duty of "review[ing] plans for construction . . . and major rehabilitation of . . . public elementary and secondary schools and . . . determin[ing] and approv[ing] the extent of eligibility for state

---

[47]  *Marathon Oil Co. v. State, Dep't of Nat. Res.*, 254 P.3d 1078, 1082 (Alaska 2011).

aid."[48]  In order to determine whether an application is eligible for reimbursement, the Department must interpret the eligibility requirements in the statute.  Statutory interpretation therefore falls squarely within the scope of its duty.

The Borough argues that its "bond structure lowers the amount of interest associated with the debt[] and provides budget certainty," thus furthering the purpose of the reimbursement program by providing affordable educational facilities.  But as the Department notes, whether the Borough's bond structure furthers the purpose of the reimbursement program is a question that falls squarely within the Department's expertise.  And whether the bonds " 'provide[] budget certainty' for the Department or the State . . . is a policy question about managing the public fisc that can only be determined by looking to unique internal government policy considerations." Interpretation of AS 14.11.100(j)(3) thus "implicates agency expertise" and policy considerations that fall "within the scope of the agency's statutory functions."[49] Applying the reasonable basis standard of review to the Department's interpretation of the statute is therefore appropriate.

**2.  The Department's determination that the bonds do not comply with statutory requirements is supported by the language of the statute and has a reasonable basis in law.**

The Borough concedes that the earlier bonds do not satisfy statutory requirements.  The parties' main dispute over the later bonds concerns whether their payment terms satisfy the requirement "that the bonds must be repaid in approximately equal annual principal payments or approximately equal debt service payments over a

---

[48]     AS 14.07.020(a)(11).

[49]     *Marathon Oil Co.*, 254 P.3d at 1082.

-18-                                    **7511**

period of at least 10 years."[50]  When applying the reasonable basis standard of review, we seek "to determine whether the agency's decision is supported by the facts and has a" reasonable basis in law, even if we may not agree with the agency's ultimate determination.[51]

Resolution of the dispute depends on the interpretation of "bond" as used in AS 14.11.100(j)(3).  The Department's interpretation implicitly refers to each bond as a whole.  The Borough's interpretation, however, treats "bond" as referring only to the school debt portion of the bond, rather than the entire bond.  If the Borough's interpretation is correct, the school-related portions were spread out over ten years and could have been deemed approximately equal.  This would mean that the 2012A and 2013A bonds complied with AS 14.11.100(j)(3)'s amortization requirement.

Interpreting "bond" to refer to bonds as a whole, instead of only the school debt portion, is consistent with the plain language of the statute and is reasonable based on the Department's expertise.  That "bond" refers to the bond itself, and not a sub-component of the bond, is also the most natural reading of the statute.  There is no indication in the statute that "bond" has any alternative meaning, nor has the Borough offered any legislative history to overcome the statute's plain meaning.[52]  Moreover,

---

[50]    AS 14.11.100(j)(3).

[51]    *City of Valdez v. State*, 372 P.3d 240, 246 (Alaska 2016) (quoting *Davis Wright Tremaine LLP v. State, Dep't of Admin.*, 324 P.3d 293, 299 (Alaska 2014)).

[52]    *See Reasner v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 394 P.3d 610, 617 (Alaska 2017) (noting that when interpreting a statute "[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be" (alteration in original) (quoting *State, Commercial Fisheries Entry Comm'n v. Carlson*, 270 P.3d 755, 762 (Alaska 2012))).

treating bonds as a whole is crucial to the Department's process of verifying a municipality's payment information.

Before reimbursing a municipality, the Department verifies that the reimbursement request matches the amount received by the municipality's trust agent. If the Department accepted the Borough's breakdown of school-related payments, "[t]he [trust agent's] payment confirmation would not match the amount reimbursed." Accepting the Borough's interpretation would also result in "alternative schedules like the ones submitted" by the Borough that "are susceptible to change and may not represent the actual selling and paying off of the bond." The Department's interpretation of the statute's requirement that equal payment terms for the bonds are required ensures that the payment verification process is accurate and not susceptible to unexpected changes.

Because the Department's conclusion that bonds 2012A and 2013A do not satisfy the statutory requirements is reasonable and is supported by the plain language of the statute, we affirm its decision that the bonds do not comply with statutory requirements.

### D. The Department's Interpretation Of AS 14.11.100(j)(3) Did Not Violate The Administrative Procedure Act.

The APA "establish[es] basic minimum procedural requirements for the adoption, amendment, or repeal of administrative regulations."[53] "An agency's failure to satisfy the APA's procedural requirements renders its action invalid."[54]

---

[53] AS 44.62.280.

[54] *Friends of Willow Lake, Inc. v. State, Dep't of Transp. & Pub. Facilities, Div. of Aviation & Airports*, 280 P.3d 542, 548-49 (Alaska 2012).

The APA defines "regulation" to "mean[] every rule, regulation, order, or standard of general application or [any] amendment, supplement, or revision" thereof.[55] "Although the definition of 'regulation' is broad, it does not encompass every routine, predictable interpretation of a statute by an agency."[56] " '[A] common sense interpretation of [a] regulation's applicability' is not a regulation, so long as it does not provide 'new requirements nor [make] the existing ones any more specific.' "[57] "When an agency's interpretation does not add substantive requirements to the statute but simply interprets the statute 'according to its own terms,' the agency is not required to adopt the interpretation as a regulation under the APA."[58]

The Borough asserts that the Department's interpretation of AS 14.11.100(j)(3) went beyond the plain language of the statute and implemented "the statutory requirements of AS 14.11.100" in an "expansive and unforeseeable" way, which is characteristic of a regulation. But, as the Department points out, that assertion "conflates the Department's oversight of a statute with a prior 'interpretation' of it." A prior Department employee acknowledged in his affidavit that he failed to apply and interpret AS 14.11.100 correctly when he recommended reimbursement for the Borough's previous bonds. That employee's failure to abide by applicable law was not

---

[55] AS 44.62.640(a)(3).

[56] *Friends of Willow Lake*, 280 P.3d at 549 (quoting *Smart v. State, Dep't of Health & Soc. Servs.*, 237 P.3d 1010, 1017 (Alaska 2010)).

[57] *Id.* (second and third alterations in original) (quoting *Alaska Ctr. for the Env't v. State*, 80 P.3d 231, 244 (Alaska 2003)).

[58] *Alyeska Pipeline Serv. Co. v. State*, 288 P.3d 736, 742 (Alaska 2012) (quoting *Alyeska Pipeline Serv. Co. v. State, Dep't of Envtl. Conservation*, 145 P.3d 561, 573 (Alaska 2006)).

"a rule, regulation, or order"; it did not constitute a regulation. An employee's oversight does not "represent [the Department's] official policy positions."[59] The Department's later application of the relevant statute "simply interprets the statute 'according to its own terms.' "[60]

The Borough cites no authority for its position that the Department's misinterpretation of AS 14.11.100 when reviewing the previous bonds is an official policy position that should be treated as a regulation or that complying with the law when reviewing the current bonds constitutes a change that requires compliance with the APA. Although the Department's past reimbursement of the Borough's unequal bond payments may have led the Borough to believe it could continue to structure its bonds the same way, there is no indication in the record that the former employee's failure to apply the controlling law constituted a formal interpretation of the statute that would bind future review.

The Borough also argues that "the Department's newly imposed general obligation bond requirement . . . makes [more] specific and implements the statutory requirements of AS 14.11.100." It asserts that the Department must therefore comply with the APA. The Department's current interpretation corrects a previous oversight. It was neither "expansive or unforeseeable" that once it learned of its previous failure to apply the law, the Department would correct that failure. Such a correction is a common

---

[59] *See Chevron U.S.A., Inc. v. State, Dep't of Revenue*, 387 P.3d 25, 40 (Alaska 2016) (holding that internal documents could not be considered a departure from a previous interpretation because they "were never meant to represent . . . official policy positions").

[60] *Id.* It is also of note that some six years passed between the former employee's approval of noncompliant applications and the Borough's request for the allocations at issue here.

sense interpretation of the law, not a regulation. The Department was not required to comply with the APA's notice and comment provisions before determining that the Borough's bonds did not comply with statutory requirements.

**E.     The Doctrine Of Substantial Compliance Does Not Apply.**

The Borough concedes that its earlier bonds do not strictly comply with AS 14.11.100(j)(3). But it argues that because the bonds substantially comply, the Department should have granted its reimbursement requests.

"We have 'adopted the doctrine of substantial compliance' in order to carry out legislative intent and give meaning to all parts of a statute 'without producing harsh and unrealistic results.' "[61] When applying the doctrine, we consider the purpose served by the statutory requirements "because 'substantial compliance involves conduct which falls short of strict compliance . . . but which affords the public the same protection that strict compliance would offer.' "[62]

The legislature added AS 14.11.100(j) in 1983 through House Bill (H.B.) 251.[63] The legislative history of the bill suggests that the legislature was concerned with rising costs associated with the debt reimbursement program in light of declining state revenue.[64] The legislature considered a number of measures to contain the cost of the

---

[61]     *Adamson v. Municipality of Anchorage*, 333 P.3d 5, 13 (Alaska 2014) (quoting *Jones v. Short*, 696 P.2d 665, 667 (Alaska 1985)).

[62]     *Id.* at 14 (quoting *Jones*, 696 P.2d at 667 n.10).

[63]     Ch. 82, § 3, SLA 1983.

[64]     *See* Testimony of Ginny Chitwood, Exec. Dir., Alaska Municipal League at 4:03-4:21, Hearing on Senate Committee Substitute for Committee Substitute for House Bill (S.C.S.C.S.H.B.) 251 Before the Sen. Fin. Comm., 13th Leg., 1st Sess. (May 19, 1983); Testimony of Bob Greene at 11:53-12:56, Hearing on S.C.S.C.S.H.B. 251
(continued...)

school reimbursement program, including imposing a one-year moratorium on debt reimbursement, reducing the percentage of bond payments covered from 90% to 50%, and requiring the Commissioner's approval prior to a local bond measure vote.[65] The final House bill capped reimbursements at 50% for bond measures approved by voters after June 30, 1983, required Commissioner pre-approval of local bond measures, and added what is now AS 14.11.100(j)(3), requiring equal payments over a period of at least ten years.[66]

Subsequent hearing testimony before the Senate Finance Committee also illustrated the legislature's concern with the predictability of future appropriations to the reimbursement program in light of tightening state budgets. A witness from the Alaska Municipal League acknowledged that "the legislature and the administration need to . . . be able to know ahead of time how much the entitlement is going to be and have some control over what that entitlement is."[67] She pointed out that because any bond issue

---

[64]     (...continued)
Before the Sen. Fin. Comm., 13th Leg., 1st Sess. (May 19, 1983).

[65]     *See* Minutes, Sen. Fin. Comm. Hearing on H.B. 251, 13th Leg., 1st Sess. (May 18, 1983).

[66]     Ch. 82, §§ 2, 3, SLA 1983.

[67]     Testimony of Ginny Chitwood, Exec. Dir., Alaska Municipal League at 4:03-4:21, Hearing on S.C.S.C.S.H.B. 251 Before the Sen. Fin. Comm., 13th Leg., 1st Sess. (1983). The text of the bill considered by the Finance Committee included the precursor to what is now AS 14.11.100(j)(3) as section (j)(2), and required eligible bonds to not be "redeemed before expiration" and "repaid in equal payments over a period of at least 15 years." Senate Committee Substitute for Committee Substitute for House Bill 251, 13th Leg., 1st Sess. (1983). The legislature changed this language in conference to its current form, requiring only "approximately equal" payments "over a period of at least 10 years." Conference Committee Substitute for House Bill 251, 13th Leg., 1st
(continued...)

would include the schedule of payments over the length of the bond, "future year entitlements can be determined easily . . . [and] there is no reason why every district can't have a five-year projection on what new bonds they anticipate selling and what the bond redemption schedule will be especially if you require a certain minimum length of term of bond."[68]

This concern with the predictability of future appropriations led to the ten-year amortization term. Requiring a ten-year minimum term of approximately equal annual payments would provide more certainty about future obligations and allow the State to more predictably plan future budgets. The legislative history shows the legislature's concern with the State's budget, not those of municipalities like the Borough.

The payment schedules for the earlier bonds do not further this legislative intent. The debt service schedules for each of these bonds show significant balloon payments in later years. The 2006A bond required the Borough to pay off approximately 85% of the bond principal in the final two years. The 2008A and 2009B bonds likewise required similar large principal payments in later years. The 2008A schedule required a pay off of approximately 60% of the bond principal in the final two years. And the 2009B bond required no principal payments for the first four years followed by large payments in years six and seven. The bonds' structure do not provide the certainty for

---

[67] (...continued)
Sess. (1983).

[68] Testimony of Ginny Chitwood, Exec. Dir., Alaska Municipal League at 5:47-6:17, Hearing on S.C.S.C.S.H.B. 251 Before the Sen. Fin. Comm., 13th Leg., 1st Sess. (May 19, 1983).

State budgeting purposes that the legislature sought.  In fact, the bonds contain precisely the type of payment schedules the legislature wanted to avoid.

Substantial compliance by its terms assumes that the party asserting its application must have largely satisfied relevant requirements.  Where, as here, the party asserts a position that is actually contrary to the stated requirements and would undermine the legislature's intent in passing the law, the doctrine of substantial compliance does not apply.

Accepting the Borough's reimbursement requests would condone the type of payment schedules AS 14.11.100(j)(3) is intended to prevent.[69]  The Department properly rejected the Borough's substantial compliance argument.

### F.   The Hearing Officer Correctly Rejected The Borough's Equitable Estoppel Claim, Which Would Have Forced The Department To Take Unlawful Action.

The Borough argues that even if the bonds at issue do not strictly or substantially comply with the statutory requirements, equitable estoppel should prevent the Department from denying its reimbursement requests.  The Borough claims that it reasonably relied on the Department's past practice of reimbursing bonds that did not comply with the statute and that the Department's denial caused the Borough harm.

We will enforce the doctrine of equitable estoppel against the State when: "(1) the [State] asserts a position by conduct or words; (2) the private party acts in reasonable reliance thereon; (3) the private party suffers resulting prejudice; and (4) the estoppel serves the interest of justice so as to limit public injury."[70]  Although a party

---

[69]     *See Adamson v. Municipality of Anchorage*, 333 P.3d 5, 13 (Alaska 2014) (rejecting municipality's argument that "would circumvent the legislature's intent").

[70]     *Municipality of Anchorage v. Stenseth*, 361 P.3d 898, 909 (Alaska 2015)
(continued...)

may meet the first three requirements, we will not enforce the doctrine "when a party's request for estoppel would require the government to take unlawful or otherwise unauthorized action."[71]

Even assuming the first three requirements for equitable estoppel are met, we will not enforce the doctrine because doing so would require the State to violate AS 14.11.100(j)(3). If the Department were equitably estopped from correcting its former employee's failure to apply AS 14.11.100(j)(3), it would be prevented — now and arguably in the future — from denying reimbursement requests that contravened the statute and the legislative intent behind the statute. The hearing officer rightfully rejected the Borough's equitable estoppel claim.

## V.    CONCLUSION

We AFFIRM the superior court's denial of a trial de novo and AFFIRM the superior court's affirmance of the Department's denial of reimbursement for the bonds that do not comply with the statutory requirements specified in AS 14.11.100(j)(3).

---

[70]    (...continued)
(quoting *Pfeifer v. State, Dep't of Health & Soc. Servs., Div. of Pub. Assistance*, 260 P.3d 1072, 1082 (Alaska 2011)).

[71]    *Alaska Trademark Shellfish, LLC v. State, Dep't of Fish & Game*, 91 P.3d 953, 960 (Alaska 2004).